941 P.2d 1301

**Marianna "Muffy" DAVIS, Plaintiff–Respondent,**

v.

**SUN VALLEY SKI EDUCATION FOUNDATION, INC., a corporation, Michel Rudigoz, and John Does 1–20, Defendants–Appellants.**

No. 22771.

Supreme Court of Idaho, Boise, April 1997 Term.

June 26, 1997.

Rehearing Denied Aug. 27, 1997.

Quane, Smith, Howard & Hull, Boise, for appellants. Jeremiah A. Quane argued.

Hepworth, Lezamiz & Hohnhorst, Twin Falls; Comstock & Bush, Boise; and Breit, Bosch, Levin & Coppola, Denver, CO, for respondent. Bradley A. Levin argued.

JOHNSON, Justice.

This is a ski accident case. We affirm the trial court's grant of a new trial pursuant to I.R.C.P. 59(a)(7) and address certain questions that may arise at the new trial.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

On February 18, 1989, Marianna Davis (Davis) took part in a training session (the training session) for ski racers sponsored by Sun Valley Ski Education Foundation, Inc. (the foundation). The foundation is a non-profit Idaho corporation that lends assistance and training to school-age students in the sport of skiing. Michel Rudigoz (Rudigoz), an employee of the foundation, set the course for the training session (the course), using parts of two ski runs on Bald Mountain at Sun Valley (the ski area) and a connecting cat track (the cat track). The cat track was narrow and contained a ninety-degree turn. The first two skiers in the training session negotiated the course without incident. Davis, the third skier, lost control on the cat track, went off the course, and hit a tree. As a result of the accident, Davis is paralyzed from the chest down.

Davis sued the foundation and Rudigoz (defendants), alleging negligence in setting the course, in failing to provide proper safety devices at the cat track, and in failing to warn of the hazards associated with the course. Defendants requested that the trial court grant them summary judgment on the ground that I.C. §§ 6–1101 through 6–1106 (the act), which define the responsibilities and liabilities of skiers and ski area operators, bars Davis from recovering for her injuries. The trial court denied the motion for

summary judgment ruling that the act does not bar recovery because defendants are not operators of the ski area.

The trial court conducted a jury trial, at the conclusion of which the jury returned a verdict apportioning the responsibility of Davis and the defendants at fifty percent each. Based on this comparison of negligence, the trial court entered judgment for defendants.

Davis requested a new trial pursuant to I.R.C.P. 59(a)(6) and (7). The trial court granted a new trial pursuant to I.R.C.P. 59(a)(7), ruling that two of the instructions and one of the questions in the special verdict form improperly instructed the jury regarding the law of assumption of the risk. The trial court also granted a new trial pursuant to I.R.C.P. 59(a)(6), ruling that the evidence was insufficient to justify the verdict.

Defendants appealed the grant of a new trial and the denial of their request for summary judgment. Defendants also seek rulings of this Court concerning certain evidentiary rulings the trial court made, in the event there is a new trial.

## II.

### DEFENDANTS WERE NOT ENTITLED TO SUMMARY JUDGMENT.

Defendants assert that the trial court should have granted them summary judgment based on the act. We disagree.

This Court has recognized that I.C. § 6–1103 sets forth the totality of the duties with which ski area operators must comply and they have no other duties. *Long v. Bogus Basin Recreational Ass'n, Inc.*, 125 Idaho 230, 232, 869 P.2d 230, 232 (1994) (citing *Northcutt v. Sun Valley Co.*, 117 Idaho 351, 787 P.2d 1159 (1990)). Defendants contend that they fall within the definition of "ski area operators" and, thus, had no duty to protect Davis from colliding with the tree.

The act defines "ski area operator" as follows:

"Ski area operator" means any person, partnership, corporation or other commercial entity and their agents, officers, employees or representatives, who has **operational responsibility** for any ski area or aerial passenger tramway.

I.C. § 6–1102(4) (emphasis added).

Defendants contend that because they had "operational responsibility" for the ski course, they fall within the definition of "ski area operator" and have only those duties set forth in I.C. § 6–1103.

The act does not define "operational responsibility." The act does list the duties of ski area operators. I.C. § 6–1103. This list gives us insight into the meaning of "operational responsibility:"

(1) marking maintenance vehicles and providing flashing lights for the vehicles when in operation;

(2) marking any hydrants or equipment used in snowmaking;

(3) marking the entrance to each slope with a symbol indicating difficulty and marking those slopes or areas which are closed;

(4) maintaining trail boards;

(5) placing notice at or near the top of any slope whenever snowgrooming or snowmaking operations are being undertaken;

(6) posting notice of the requirement of ski retention devices;

(7) providing a qualified ski patrol;

(8) posting a sign at the bottom of aerial passenger tramway instructing those not familiar with riding the tramway to seek advice; and

(9) not intentionally or negligently causing injury to any person.

*Id.*

In conducting the training session, defendants did not have the responsibility to fulfill any of these duties. Sun Valley Company has operational responsibility for the ski area, including the area where the course was set up. The foundation is not related to Sun Valley Company, nor has it ever been an agent, officer, employee, or representative of Sun Valley Company.

The mere fact that defendants set up the course within the ski area does not make

them a "ski area operator." By setting up the course, defendants were not engaging in any duties or activities of a "ski area operator." By making use of the ski area for training, defendants did not exercise "operational responsibility" for the ski area. The trial court correctly denied defendants summary judgment on this basis.

Defendants also contend that regardless of whether they fall within the definition of a ski area operator, pursuant to the following portion of I.C. § 6–1106 Davis expressly assumed the risk for the injuries she sustained in the accident:

It is recognized that skiing as a recreational sport is hazardous to skiers, regardless of all feasible safety measures which can be taken.

**Each skier expressly assumes the risk of and legal responsibility for any injury to person or property which results from participation in the sport of skiing including any injury caused by the following**, all whether above or below snow surface: variations in terrain; surface or subsurface snow or ice conditions; bare spots, rocks, **trees, other forms of forest growth or debris**, lift towers and components thereof; utility poles, and snowmaking and snowgrooming equipment which is plainly visible or plainly marked in accordance with the provisions of section 6–1103, Idaho Code. Therefore, each skier shall have the sole individual responsibility for knowing the range of his own ability to negotiate any slope or trail, and it shall be the duty of each skier to ski within the limits of the skier's own ability, to maintain reasonable control of speed and course at all times while skiing, to heed all posted warnings, to ski only on a skiing area designated by the ski area operator and to refrain from acting in a manner which may cause or contribute to the injury of anyone. The responsibility for collisions by any skier while actually skiing, with any person, shall be solely that of the individual or individuals involved in such collision and not that of the ski area operator.

I.C. § 6–1106 (emphasis added).

The portion of the act which contains its legislative purpose refers to the assumption of these risks by a skier as follows:

Since it is recognized that there are inherent risks in the sport of skiing which should be understood by each skier and which are essentially impossible to eliminate by the ski area operation, it is the purpose of this chapter to define those areas of responsibility and affirmative acts for which ski area operators shall be liable for loss, damage or injury, and to define those risks which the skier expressly assumes and for which there can be no recovery.

I.C. § 6–1101.

The act deals only with the liability of ski area operators (I.C. § 6–1107), passengers on an aerial passenger tramway (I.C. § 6–1108), and skiers (I.C. § 6–1109). It does not attempt to consider the liability of others, such as the foundation and Rudigoz. In describing the liability of skiers, the act states:

Any skier shall be liable for loss or damages resulting from violations of the duties set forth in section 6–1106, Idaho Code, and shall not be able to recover from the ski area operator for any losses or damages where the violation of duty is causally related to the loss or damage suffered.

I.C. § 6–1109.

■ These provisions of the act lead us to construe the assumption of risks contained in I.C. § 6–1106 as applying only to any liability of a ski area operator.

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN GRANTING A NEW TRIAL PURSUANT TO I.R.C.P. 59(a)(7).

Defendants assert that the trial court abused its discretion in ordering a new trial pursuant to I.R.C.P. 59(a)(7). We disagree.

■ I.R.C.P. 59(a)(7) provides that the trial court may grant a new trial for "[e]rror in law, occurring at the trial." The decision on whether to grant a new trial on this ground is within the discretion of the trial

court and will not be disturbed on appeal "unless it clearly appears to have been applied unwisely and to have been manifestly abused." *Sherwood v. Carter,* 119 Idaho 246, 261, 805 P.2d 452, 467 (1991). Where substantial rights of the aggrieved party are not affected and that party is not entitled to a new trial as a matter of right, the trial judge is vested with wide discretion in granting or denying a motion for a new trial. *Id.* "The trial court has the duty to grant a new trial where prejudicial errors of law have occurred at the trial, even though the verdict is supported by substantial evidence." *Id.* at 262, 805 P.2d at 468.

■ In the present case, the trial court ruled that it incorrectly gave the following instructions and special verdict question:

INSTRUCTION NO. 11

The defendants, before and at the time of the occurrence, did not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport.

A sports participant assumes the risks that are an inherent and normal part of a sport, but they do not assume the risks caused by the negligence of a defendant which unduly enhances such risks.

INSTRUCTION NO. 13 (second half)

In this case, the defendants have asserted the affirmative defense that the proximate cause of the plaintiff's injuries and damages was the inherent risks of the sport that the plaintiff was participating in, and that the plaintiff was negligent. The defendants have the burden of proving each of the following propositions:

(1) That the plaintiff acted, or failed to act, in one of the ways claimed by the defendants and in so acting, or failing to act, the plaintiff was negligent and/or assumed the inherent risks of her sport;

(2) That the negligence of the plaintiff and/or the inherent risks of the sport were the proximate cause of the injury and damages claimed to have been suffered by the plaintiff.

QUESTION NO. 2

Were the actions of the Plaintiff, Marianna "Muffy" Davis, a proximate cause of the accident by being negligent and/or by assuming the inherent risks of skiing?

In granting a new trial, the trial court decided that it should not have given these instructions and this special verdict question because of the advent of comparative negligence. The trial court concluded that the issue of assumption of the risk "should have been left to the argument of counsel and decision of the jury couched in negligent acts or failure to act on the part of the plaintiff which constituted negligence."

In *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985), this Court rejected the continued use of assumption of the risk as an absolute bar to recovery in light of Idaho's adoption of comparative fault, stating:

[W]e hold that the use of assumption of the risk as a defense shall have no legal effect in this state. The types of issues raised by a plaintiff's non-express assumption of risk are readily handled by resort to contributory negligence principles. Thus, such issues should be discussed in terms of contributory negligence, not assumption of risk, and applied accordingly under our comparative negligence laws.

The one exception to our holding today involves a situation where a plaintiff, either in writing or orally, expressly assumes the risk involved. In such a case, the plaintiff's assumption of the risk will continue to be a complete bar to recovery. Again, in order to avoid misunderstanding and confusion, the terminology of assumption of risk, however, should not be used. Rather, since express assumption of risk clearly sounds in contract and not tort, ... the correct terminology to use to assert this defense should be that of "consent" or something of a similar nature.

*Id.* at 989–90, 695 P.2d at 374–75.

The question we must decide in the present case is how the trial court should have instructed the jury concerning the assumption of risk to which I.C. § 6–1106 refers. In doing so, we must consider whether this assumption of the risk is assumption of risk in the primary sense —— a complete bar to recovery, or in the secondary sense —— merely a form of comparative negligence.

*See Fawcett v. Irby,* 92 Idaho 48, 55, 436 P.2d 714, 721 (1968)(Justice Spear, concurring specially).

I.C. § 6–1109 provides that a skier may not recover from the ski area operator for any losses or damages where the skier has violated a duty set forth in I.C. § 6–1106 and where the duty is causally related to the loss or damage suffered. This makes it clear that so far as any liability of a ski area operator, the assumption of risk to which I.C. § 6–1106 refers is assumption of risk in the primary sense. This constitutes an amendment of the comparative negligence statutes.

There is no similar portion of the act that amends the comparative negligence statutes concerning the liability to the skier of those other than the ski area operator. Therefore, we conclude that so far as the liability of those other than the ski area operator, the assumption of risk to which I.C. § 6–1106 refers must be assumption of risk in the secondary sense, or nothing more than a form of comparative negligence. The trial court correctly concluded that it erroneously instructed the jury concerning assumption of risk.

Therefore, we conclude that the trial court did not abuse its discretion in granting a new trial pursuant to I.R.C.P. 59(a)(7). The trial court correctly perceived that it had discretion in ruling on the request for a new trial, acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the decision it had to make, and reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

Because of our resolution of this issue, we do not address the trial court's granting of a new trial pursuant to I.R.C.P. 59(a)(6).

## IV.

## QUESTIONS OF LAW NECESSARY TO FINAL DETERMINATION OF CASE.

The parties have presented several other issues for our consideration. Since we have upheld the trial court's grant of a new trial, it is appropriate for us to "pass upon and determine all the questions of law involved in this case presented upon such appeal, and necessary to the final determination of the case." I.C. § 1–205; *Baker v. Shavers, Inc.,* 117 Idaho 696, 698, 791 P.2d 1275, 1277 (1990).

### A. The Trial Court's Exclusion of Evidence Concerning Speed.

Davis asserts that the trial court incorrectly excluded evidence of the speeds and manner in which recreational skiers negotiated the cat track where Davis's accident occurred. We rule that the trial court did not abuse its discretion in rejecting one witness's testimony based on I.R.E. 403 and that the testimony of two other witnesses is relevant.

Defendants contend that the trial court improperly excluded testimony from Bruce Malone, Rudigoz and Steve Harkrader. At trial, defendants' case concerning the safety of the course focused on whether the use of the cat track was safe. Defendants contend that the cat track was safe because control gates were used to slow skiers to an acceptable speed when they entered the cat track. On cross-examination Davis's expert testified that when designing a course including the cat track there were two options: (1) slow the skiers to an acceptable speed; or (2) use protective devices. Therefore, there was a factual issue concerning what was a safe speed and whether the course design slowed the skiers sufficiently.

### 1. The Testimony of Bruce Malone.

■ At trial, defendants attempted to introduce testimony of Bruce Malone, a member of the Sun Valley ski patrol. During cross-examination, defense counsel questioned Malone concerning what he does in attempting to eliminate unreasonable hazards. Counsel for Davis objected. Out of the presence of the jury, counsel for Davis argued that the testimony of Malone would be expert testimony, and he was not endorsed as an expert witness. Second, counsel for Davis argued that there was an attempt by this testimony to shift the blame to Sun Valley Company and this could confuse the jury. Defense counsel responded that he

did not intend to elicit expert opinions and that he only wanted to question Malone regarding his observations of the public skiing the cat track.

The trial court ruled:

> The Court has considered the objection of [Davis's attorney]. Taking into consideration the rules concerning the experts, as well as [I.R.E.] 401 on relevant issues, it seems to me that activities of recreational skiers on other days are not relevant. The plaintiff's expert acknowledged that there was no known accidents at this location.
>
> And [I.R.E.] 403, the probative value outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury regarding recreational skiers, as well as Sun Valley Company, the Court is going to limit the questioning to investigation of this particular case.

Following the trial court's ruling, Malone testified in an offer of proof regarding speeds at which he has observed recreational skiers negotiate the cat track and that he had no knowledge of any skiers leaving the cat track and becoming injured.

We do not address whether Malone's testimony was inadmissible because it was expert evidence or whether it was inadmissible because it was not relevant. The trial court excluded Malone's testimony after engaging in the balancing required by I.R.E. 403, ruling that the probative value of the testimony was outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury regarding recreational skiers and the Sun Valley Company.

■ A ruling under I.R.E. 403 requires the trial court to balance the probative value of the evidence against the prejudicial nature of the evidence and the decision whether to admit the evidence is a matter of discretion for the trial court. *State v. Raudebaugh*, 124 Idaho 758, 765, 864 P.2d 596, 603 (1993).

In the present case, the trial court perceived the I.R.E. 403 issue as one of discretion, acted within the outer boundaries of its discretion and consistently with the legal choices available to it, and reached its decision by an exercise of reason. Therefore, regardless of any question concerning the expert nature of Malone's testimony or its relevance, the trial court did not abuse its discretion in not allowing Malone to testify. *Sun Valley Shopping Ctr.*, 119 Idaho at 94, 803 P.2d at 1000.

## 2. The testimony of Steve Harkrader.

■ Steve Harkrader, a Sun Valley Company ski lift mechanic, witnessed the accident from a chairlift. Harkrader provided a written statement wherein he stated that Davis was traveling at a "fairly high rate of speed." At trial, defense counsel questioned Harkrader as to what he meant when he used the phrase, "fairly high rate of speed." Harkrader stated that he could not estimate Davis's speed in terms of miles per hour because he had never "clocked" anyone. Defense counsel then asked to what Harkrader was trying to compare Davis's speed when Harkrader said she was traveling at a high rate of speed. Counsel for Davis objected to this question. In an offer of proof, Harkrader testified that he judges relative speeds of skiers, that Davis was traveling ten to fifteen percent faster than himself, and ten to fifteen percent faster than the "usual."

Following the offer of proof, defense counsel argued that Harkrader should be allowed to testify regarding what he meant by "fairly high rate of speed" and that, from the offer of proof, the phrase has a different meaning than what Davis had offered it for. The trial court sustained the objection, ruling:

> It appears to the Court that like instructions, the term that's used is a common term, and the jury can draw their own conclusion as to what it means. If there were—if we do go into explanations, the witness has testified that he's an expert skier, he can—he could go fast, but she was making the turn faster than he would, and he doesn't take risks. That just seems to amplify the term itself. And, in addition, he would say ten to fifteen percent faster than most recreational skiers.
>
> Again, this witness is presented as an eyewitness. And it doesn't seem to the Court that his own characteristics should be brought into it. The only relevant comparison should be with the racers on the

course that day or kids of that age or something that relates to it.

So the Court will sustain the objection to giving any further explanation.

 We conclude that the trial court excluded Harkrader's testimony solely on the ground it was not relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. We review questions of relevancy de novo. *Raudebaugh*, 124 Idaho at 766, 864 P.2d at 604.

We conclude that Harkrader's testimony is relevant concerning what he meant by the phrase, "fairly high rate of speed," regardless of any other relevancy it may have.

### 3. The testimony of Rudigoz.

 During defendants' case in chief, Rudigoz testified concerning the factors he took into account when he designed the course. The trial court refused to allow his testimony contained in an offer of proof that (1) he had observed recreational skiers traveling on the cat track and the curve in question at anywhere between ten to forty-five miles per hour, (2) he had never observed any accidents in that area, and (3) he had observed recreational skiers negotiate the curve on various snow conditions including conditions similar to the conditions which existed on the morning of Davis's accident.

After the offer of proof, the trial court stated:

Thank you. I'll add to what I've said before that we're talking about young skiers who are in training, different motivations; in addition, the area we are talking about has been adequately covered and is somewhat repetitious as far at the court is concerned. *So the ruling will stand.*

We conclude that Rudigoz's testimony is relevant concerning one of the factors he took into account in setting the course. In the new trial, of course, the trial court may have other reasons for excluding the evidence.

### B. The Trial Court Correctly Excluded Evidence of Pre-injury Release Agreements.

 Defendants assert that the trial court should have allowed them to present evidence of two pre-injury releases. We disagree.

One of the releases is an unexecuted copy of the foundation's standard release agreement (the foundation's release). Defendants claim that Davis and her parents had signed a similar form but that the original was destroyed. The other release is a United States Ski Association release (the USSA release) signed by Davis and one of her parents.

Under the heading "WAIVER AND RELEASE OF LIABILITY," the foundation release provides:

*Parent(s) (and Skier, if 18 years of age or older)* affirm that, on his own initiative and assumption of risk, Skier is permitted and is going to participate in Foundation skiing programs for the time period described in Paragraph 1 above. *In consideration of the Foundation's organization, sponsorship, coaching and training services for Skier, Parent(s) (and Skier if 18 years of age or older) hereby release and forever discharge the Foundation,* it's [sic] successors, assigns, Board of Directors, officers, employees and agents from all future claims, rights of causes of action which may accrue as a result of personal injury or property loss or damage sustained by Skier arising out of, or as a consequence to Skier's participation in Foundation activities and programs unless such injury, loss or damage is the result of gross negligence by the Foundation. *Parent(s) (and Skier, if 18 years of age or older) understand* that the sport of skiing and ski racing and the transportation to and from training and races involve risk of bodily injury to Skier and loss or damage to property, and knowingly and voluntarily assume that risk. (Emphasis added).

The foundation release above does not release any claim that may accrue to Davis for personal injuries. The release states that "Parent(s) (and Skier if 18 years of age or older) hereby release and discharge" the

foundation from any claims. At the time of the accident, Davis was under the age of eighteen. Therefore, the foundation release only releases any claims of Davis's parents and not the claims of Davis. Davis's parents are not parties in the present case.

By its terms, the USSA release does not apply to any liability the foundation may have and is irrelevant concerning the relationship between Davis and the foundation. Because the foundation release does not purport to release the claims of Davis and the USSA release is not applicable, we do not consider whether a pre-injury release of a minor's claim is valid.

### C. Expert Evidence Concerning Davis's Loss of Income.

Defendants assert that the trial court should not have allowed Davis to present expert evidence concerning her loss of income based on Davis becoming an orthopedic surgeon. We do not address this question because the trial took place in September 1995 while Davis was pursuing her pre-medical training. At the new trial, which will undoubtedly be at least several months in the future, if not longer, the facts concerning Davis's future prospects will be different than they were at the first trial.

### V.

### CONCLUSION

We affirm the trial court's grant of a new trial pursuant to I.R.C.P. 59(a)(7), and remand the case to the trial court. For the guidance of the trial court and the parties, we have also addressed some other questions that may arise during the new trial.

We award Davis costs on appeal.

TROUT, C.J., and McDEVITT, SILAK and SCHROEDER, JJ., concur.