39 P.3d 577

**Mark S. ROCKEFELLER, dba Rocke-feller & Associates, Plaintiff–Re-spondent–Cross Appellant,**

v.

**John C. GRABOW and Laura M. Grabow, Defendants–Appellants–Cross Respondents.**

No. 24580.

Supreme Court of Idaho,
Idaho Falls, May 2001 Term.

Aug. 20, 2001.

Rehearing Denied Feb. 28, 2002.

Law Office of John C. Grabow, Ketchum, for appellant. John C. Grabow argued.

Thomsen & Stephens, P.A., Idaho Falls, for respondents. James D. Holman argued.

TROUT, Chief Justice.

This case involves the parties to a Property Development and Agency Agreement ("Agreement") to develop and market a residential development in Teton County. Mark Rockefeller ("Rockefeller") dba Rockefeller & Associates ("R & A"), a real estate broker, sued John and Laura Grabow (collectively

"Grabows"), the property owners, for his commissions under the Agreement. The Grabows counterclaimed for damages based upon alleged breaches of the Agreement and fiduciary duties.

The Grabows appeal the district judge's determination that Rockefeller is entitled to his development commissions even though a jury found that he breached his fiduciary duties. The Grabows also claim the district judge violated the Seventh Amendment to the United States Constitution by determining the amount of commissions owed to Rockefeller and erred in refusing to award them their attorney fees even though they prevailed at trial. In his cross-appeal, Rockefeller claims the district judge erred in admitting the Grabows' evidence on lost profit damages, excluding expert testimony on realtor fiduciary duties and instructing the jury on punitive damages.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In 1991, Rockefeller helped the Grabows locate some property in Teton County to develop. In January 1992, the Grabows and Rockefeller entered into the written Agreement to develop the Shooting Star Ranch residential development. Paragraph 1 of the Agreement outlined Rockefeller's development duties, for which he was to receive two percent of the sale price of any subdivided property. As long as Rockefeller completed his Paragraph 1 duties, he was entitled to these commissions even if the Agreement was subsequently terminated. Paragraphs 2 and 3 of the Agreement appointed R & A as the exclusive listing broker and sales representative for eight years. On unassisted sales, R & A was to receive a six percent commission. On assisted sales, R & A would receive a three percent commission and the co-operating brokerage would receive a four percent commission. In Paragraph 6 Rockefeller and R & A agreed to use their best efforts to develop and market the property and the Grabows were given the right to terminate the Agreement with ten days notice.

On September 12, 1994, the Grabows sent Rockefeller a letter informing him the Agreement would be terminated at the end of sixty days. In the letter, and later at trial, the Grabows asserted numerous violations of the Agreement and fiduciary duties. The two main breaches alleged were Rockefeller's misrepresentation of the commission typical to the marketplace and taking the listing of an adjoining property whose owner had an access dispute with the Grabows.

The Grabows and Jerry Linn ("Linn") had an ongoing dispute over whether Linn had an easement across lot 44 of Shooting Star Ranch. The dispute was partly based upon an alleged representation by Rockefeller when the Grabows were first considering purchasing the Shooting Star Ranch property that the road across lot 44 had been used exclusively for logging. The termination letter was sent the day after Rockefeller refused to write down his recollection of what he had represented to the Grabows when showing them the property.

Through discovery, the Grabows also found out that R & A had drawn up a sales contract for Linn's property that conditioned closing with Ed and Judy Staten (collectively "Statens") upon "winning County level suit with John Grabow, or upon Grabow giving suitable access (to be recorded) across lot 44 Shooting Star." When Linn was unable to pay attorney fees, R & A assisted in creating an arrangement whereby bills from Linn's attorney were sent to R & A and paid out of the Statens' escrow account. Finally, Linn filed suit, but delayed service of the papers because negotiations between the Statens and the Grabows looked promising. Rockefeller allowed the Grabows to negotiate with the Statens over the access issue without informing the Grabows of any of these facts.

After the Agreement was terminated, Rockefeller sued the Grabows for his development and sales commissions. The Grabows filed a counterclaim for damages arising from Rockefeller's breach of the Agreement and violation of his fiduciary duties. Both parties filed motions for summary judgment on their claims.

A hearing was held on Rockefeller's motion first. On May 15, 1996, the district judge entered a decision granting Rockefeller's motion as to his development commissions because Rockefeller had substantially performed his development duties. The district judge did not address the claimed fiduciary breaches. On May 24, 1996, a hearing was held on the Grabows' motion for summary judgment on the breach of fiduciary duty claims, which motion was denied.

Shortly before trial, the district judge decided various motions. The district judge denied Rockefeller's motion to exclude the testimony of the Grabows' damages expert, granted the Grabows' motion to exclude the testimony of Rockefeller's standard of care experts, and granted the Grabows' motion to amend their claim to seek punitive damages.

At trial, the jury was instructed not to concern itself with the two percent development commission because Rockefeller was entitled to it as a matter of law and the court would "apportion that amount at another proceeding." After deliberating, the jury returned a verdict in favor of the Grabows. The jury determined the Grabows had not breached the terms of the Agreement by wrongfully terminating Rockefeller and that Rockefeller had breached his fiduciary duties. The jury awarded the Grabows $18,250 in damages and $36,500 in punitive damages.

The parties then made several post-trial motions. Rockefeller moved for a new trial, judgment notwithstanding the verdict, remittitur, attorney fees and costs, and the two percent development commission. The Grabows made motions for their attorney fees and disgorgement of any commissions paid to Rockefeller. The district judge granted Rockefeller $40,822 representing the present value of the development commissions on future lot sales at Shooting Star Ranch. The district judge also granted Rockefeller his attorney fees incurred in getting summary judgment on the two percent development commission. All other motions were denied. On September 10, 1997, the district judge amended the judgment to include $19,369 in development commissions on lots that had been sold up until February 14, 1997. Off-setting the jury award to the Grabows against the district judge's award to Rockefeller resulted in the Grabows owing Rockefeller $5,441 plus attorney fees and costs.

The Grabows then filed a motion to amend the judgment because the district judge had not deducted expenses that would have been incurred in earning the development commissions; the assumptions relied upon by the district judge in figuring the present value of sales were not supported by the evidence; and the district judge improperly denied the Grabows the right to a jury trial on the issue of the amount of the development commissions. The district judge denied the motion.

The Grabows appealed and Rockefeller cross-appealed.

## II.

## THE DEVELOPMENT COMMISSION

### A. The District Judge Erred In Granting Rockefeller Summary Judgment For His Development Commission.

On appeal from the grant of a motion for summary judgment, this Court employs the same standard as that used by the trial court originally ruling on the motion. *Farmers Ins. Co. of Idaho v. Talbot,* 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999). Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). If reasonable people could reach different conclusions or draw conflicting inferences from the evidence the motion must be denied. *Id.* However, if the evidence reveals no disputed issues of material fact the trial court should grant the motion for summary judgment. *Farm Credit Bank v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994).

■ Rockefeller was the Grabows' development agent even before the parties entered into the Agreement. Rockefeller continued to act as the Grabows' development agent up until the time the Agreement was terminated, at which time he had only substantially performed his duties. As the Grabows' agent, Rockefeller was "a fiduciary with respect to matters within the scope of his agency." RESTATEMENT (SECOND) OF AGENCY § 13 (1958); *see also Mallory v. Watt,* 100 Idaho 119, 122, 594 P.2d 629, 632, (1979) ("A real estate broker is an agent standing in a fiduciary relation to his principal."); *Jordan v. Hunter,* 124 Idaho 899, 865 P.2d 990 (Ct. App.1993) (corporate officers are agents and subject to the fiduciary duties of agents).

■ It is the established law of this jurisdiction that an agent's right to compensation will be affected by a violation of his fiduciary duties. *See, e.g., Cooke v. Iverson,* 94 Idaho 929, 933, 500 P.2d 830, 835 (1972) (real estate agents lose their commissions for failure to disclose material facts); *Schroeder v. Rose,* 108 Idaho 707, 710, 701 P.2d 327, 330 (Ct. App.1985) (compliance with fiduciary duties is a condition precedent to collecting a commission); *see also* RESTATEMENT (SECOND) OF AGENCY §§ 456 and 469 (1958). Allowing an agent to retain his entire commission as a matter of law when he has breached his fiduciary duties would eviscerate agency law. Secure in his compensation from the principal as long as the assigned task is completed, an agent's only chance of loss from violating his duties would be if he harmed the principal. The higher requirement of acting in the interest of the principal, without a means of enforcement, would simply cease to exist.

Since the breach of fiduciary duties will affect an agent's claim to compensation, the district judge erred in awarding Rockefeller his development commissions while there existed material issues of fact as to whether Rockefeller had breached his duties.

**B. The Amount Of The Development Commission Rockefeller Must Forfeit Is To Be Determined By The District Judge.**

The Grabows argue not only that the grant of summary judgment for Rockefeller was in error, but also, since a jury has found Rockefeller breached his duties, as a matter of law Rockefeller must forfeit the entire development commission. This position has support in the Idaho cases involving real estate brokers who have violated their fiduciary duties. *See, e.g., Cooke v. Iverson,* 94 Idaho 929, 500 P.2d 830 (1972); *Schroeder v. Rose,* 108 Idaho 707, 701 P.2d 327 (Ct. App.1985). These cases sanctioning complete forfeiture involve the commission earned in a single, specific transaction. The present case, however, presents different circumstances. Rockefeller's services were provided over a period of years. He was responsible for platting, getting government approval, and preparing the development for sale. Among other things, he supervised road construction and the installation of water, electric, and telephone service. In addition, Grabows were aware of some of the breaches early in the development process, yet did not terminate the agreement until Rockefeller had substantially completed his development duties. Although this Court has not addressed whether an agent automatically forfeits his entire commission upon breaching his fiduciary duties, several other states have addressed the issue.

In *Burrow v. Arce,* 997 S.W.2d 229 (Tex. 1999), the Texas Supreme Court rejected the theory of automatic full forfeiture. The *Burrow* Court found that "to require an agent to forfeit all compensation for every breach of fiduciary duty, or even every serious breach, would deprive the remedy of its equitable nature." *Id.* at 241. Instead, the Court held that Texas law requires a consideration of several factors in determining the amount of forfeiture, including: "the gravity and timing of the violation, its willfulness, its effect on the value of the [agent's] work for the [principal], and other threatened or actual harm to the [principal] and the adequacy of other remedies." *Id.* at 243.

In *Marnon v. Vaughan Motor Co.,* 184 Or. 103, 169–73, 194 P.2d 992, 1020–21 (1948), the Oregon Supreme Court recognized the general rule that a disloyal agent "forfeits all right to recover for services rendered on his principal's behalf," but found that the rule "is

not an inflexible one"; whether compensation is denied a fiduciary "ultimately rests in the discretion of the court." (quoting *Shulkin v. Shulkin,* 301 Mass. 184, 194, 16 N.E.2d 644, 652 (1938)). In a more recent case, the Oregon Supreme Court, although deciding the facts did not justify a departure from the general rule, noted "[t]he remedy of restoration of compensation is an equitable principle and its application is dependent upon the individual facts of each case." *American Timber & Trading Co. v. Niedermeyer,* 276 Or. 1135, 1155, 558 P.2d 1211, 1223 (1976).

Before other courts, principals have cited to the RESTATEMENT (SECOND) OF AGENCY § 469 (1958) in support of their contention that breaches of fiduciary duty result in automatic commission forfeiture. Section 469 provides:

> An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a willful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned.

A Washington Court of Appeals decision explains why this section does not result in automatic forfeiture.

> The word "entitled" used in § 469 is defined to mean "To give a right to." A reading of § 469 in light of this definition, would indicate a disloyal agent does not have a *right* to compensation by virtue of a breach of his duty of loyalty, but a breach does not exclude the exercise of the court's discretion granting him compensation.

*Williams v. Queen Fisheries, Inc.,* 2 Wash. App. 691, 698, 469 P.2d 583, 588 (1970).

■ Although these decisions are not binding on this Court, we find them persuasive. As we have already discussed above, under Idaho law the general rule is that an agent who breaches his fiduciary duties forfeits his entire compensation. *See, e.g., Cooke,* 94 Idaho 929, 500 P.2d 830 (1972). However, because commission forfeiture is an equitable remedy, *see Enstar Group, Inc. v. Grassgreen,* 812 F.Supp. 1562 (M.D.Ala. 1993) (characterizing forfeiture as an equitable claim); *Central Sec. and Alarm Co. v.*

*Mehler,* 121 N.M. 840, 846, 918 P.2d 1340, 1346 (App.1996) (stating the restitution of wages paid to a disloyal agent is an equitable remedy); *Burrow,* 997 S.W.2d at 237 ("the equitable remedy of forfeiture"), we find the rule is not inflexible. After considering the circumstances of the case, it is within the equitable jurisdiction of the trial judge to adjust the amount of forfeiture. In making its determination, the trial judge should consider factors including: the seriousness and timing of the violation; the willfulness of the breach; the potential for, or actual harm to the principal; and whether the agent completed a divisible portion of his contract duties before the breach occurred for which compensation can be determined.

■ In the present case, the grant of summary judgment only prevented the issue of the development commissions from going to the jury. At trial, the district judge allowed the Grabows to present evidence concerning all of the claimed fiduciary breaches. The jury was able to consider all of the allegations in determining that a breach had occurred and in determining the amounts of compensatory and punitive damages to be awarded to the Grabows. Therefore, the grant of summary judgment is harmless error unless the district judge abused his discretion in determining the amount of commissions he awarded to Rockefeller.

■ There is no abuse of discretion where the trial court perceives the issue in question as discretionary, acts within the outer limits of its discretion and consistently with the legal standards available to the available choices, and reaches its own decision through an exercise of reason. *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Here, the district judge awarded Rockefeller his entire commission as a matter of law. There is no indication in the record or the judge's decision that he perceived the issue as one of discretion; that he considered the general rule that an agent who breaches his fiduciary duties is not entitled to compensation; or that he considered the facts of the case to determine whether a departure from the general rule was justified. The district

judge, therefore, abused his discretion and the award of Rockefeller's development commissions is reversed.

## C. The District Judge Did Not Violate The Grabows' Seventh Amendment Rights By Unilaterally Determining The Present Value Of Development Commissions To Be Paid On Future Sales.

■ The Grabows contend the district judge violated their Seventh Amendment right to have a jury determine the present value of the two percent development commission on future sales. It is well established, however, "that the Seventh Amendment does not apply to the states in so far as the right to a jury trial in civil cases is concerned." *Sheets v. Agro–West, Inc.*, 104 Idaho 880, 884, 664 P.2d 787, 791 (Ct.App. 1983) (citing *Pearson v. Yewdall*, 95 U.S. 294, 24 L.Ed. 436 (1877); *Walker v. Sauvinet*, 92 U.S. 90, 23 L.Ed. 678 (1875)); *see also Dice v. Akron, Canton, & Youngstown Railroad Co.*, 342 U.S. 359, 366, 72 S.Ct. 312, 316, 96 L.Ed. 398, 405 (1952) (J. Frankfurter, dissenting) ("[T]he Seventh Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts, or the standards which must be applied concerning the same."); *Malinski v. New York*, 324 U.S. 401, 416, 65 S.Ct. 781, 788, 89 L.Ed. 1029, 1039 (1945) (J. Frankfurter's opinion) (finding the United States Supreme Court has repeatedly held for over a hundred years that states are not required to provide jury trials in suits at common law where damages exceed twenty dollars); 47 AM.JUR. 2d *Jury* § 5 (1995).

## III.

## ATTORNEY FEES

## A. The District Judge's Award Of Attorney Fees To Rockefeller Is Vacated.

The Grabows argue the district judge erred in awarding Rockefeller his attorney fees. Because we have reversed grant of summary judgment, we vacate the award of attorney fees.

## B. The District Judge Did Not Err In Denying The Grabows' Request For Attorney Fees.

The Grabows sought attorney fees at trial pursuant to I.C. §§ 12–120(3) and 12–121.[1] The district judge denied the Grabows' request under I.C. § 12–120(3) because he could not separate the fees spent on the contract defense from the tort counterclaim. We affirm.

Idaho Code § 12–120(3) provides:

> In any civil action to recover on ... contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

Here, the Grabows were successfully able to defeat the claim for sales commissions by demonstrating Rockefeller had breached his fiduciary duties. Therefore, pursuant to I.C. § 12–120(3), the Grabows, as the prevailing party, are entitled to their attorney fees incurred in defeating Rockefeller's contract claim.

■ The Grabows, however, used the breach of fiduciary duty not only as a shield, but also as a sword. Grabows counterclaimed, and received damages for, Rockefeller's breach of his fiduciary duties. Where the gravamen of the claim is for damages arising out of the breach of a fiduciary duty, an award of attorney fees is not proper under I.C. § 12–120(3) because the action sounds in tort. *Property Management West, Inc. v. Hunt*, 126 Idaho 897, 899–900, 894 P.2d 130, 132–33 (1995). The fact that the fiduciary breach claim arose out of a commercial transaction is not sufficient to apply I.C. § 12–120(3). *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 79, 910 P.2d 744, 752 (1996). Therefore, the attorney fees incurred in establishing the counterclaim of breach of fidu-

1. While John Grabow is an attorney licensed to practice in Idaho, the Grabows were represented at trial by another attorney and were not representing themselves, as they are on appeal.

ciary duty are not recoverable under § 12–120(3).

Here, the district judge could not apportion those fees that were incurred in using the breach of fiduciary duty issue as a contract defense from those incurred in using the breach issue as a tort counterclaim. Where fees were not apportioned between a claim that qualifies under I.C. § 12–120(3) and one that does not, no fees are to be awarded. *See id.*

The Grabows also contend they are entitled to their fees pursuant to I.C. § 12–120(3) for the fees incurred in proving their breach of contract counterclaim. Although the Grabows originally made a claim that Rockefeller had failed to use his best efforts, the issue was not submitted to the jury. The final instructions given to the jury required the Grabows to prove a breach of a fiduciary duty in order to recover and only instructed the jury on how to assess damages for a breach of fiduciary duty. Since the best efforts claim was never submitted to the jury, the Grabows are not the prevailing party on the claim and an award of attorney fees under I.C. § 12–120(3) would be inappropriate.

The Grabows also requested attorney fees pursuant to I.C. § 12–121. The decision to award attorney fees pursuant to I.C. § 12–121 is committed to the discretion of the district judge. *Allstate Ins. Co. v. Mocaby,* 133 Idaho 593, 600, 990 P.2d 1204, 1211 (1999). The applicable legal standard is whether "all claims brought or all defenses asserted are frivolous and without foundation." *Chapple v. Madison County Officials,* 132 Idaho 76, 81, 967 P.2d 278, 283 (1998).

The district judge found that Rockefeller's defenses were not frivolous. Rockefeller raised legitimate issues as to whether he had told the Grabows the road was used exclusively for logging; whether it was reasonable for him to be required to travel to Lander and review DEQ files; whether it was a reasonable request to have him hand deliver a letter to a neighbor who had interfered with a sale; and whether the actions involving the Linn listing constituted a breach of his fiduciary duties. We find no abuse of discretion in the district judge's decision not to award the Grabows their attorney fees pursuant to I.C. § 12–121.

## IV.

## THE DISTRICT JUDGE DID NOT ERR IN DENYING ROCKEFELLER'S RULE 59(a)(7) MOTION FOR A NEW TRIAL

Rockefeller claims the district judge erred in denying his motions for a new trial, judgment notwithstanding the verdict, and remittitur. On appeal, Rockefeller raises only three of many issues he raised below, which relate to his I.R.C.P. 59(a)(7) motion for a new trial. We will, therefore, only review the district judge's ruling on the motion for a new trial.

Rule 59(a)(7) provides that the trial court may grant a new trial for "error in law, occurring at the trial." The district judge is vested with wide discretion to grant or deny a new trial where substantial rights of the aggrieved party are not affected and that party is not entitled to a new trial as a matter of right. *Davis v. Sun Valley Ski Education Foundation,* 130 Idaho 400, 405, 941 P.2d 1301, 1306 (1997). The trial court has a duty to grant a new trial under I.R.C.P. 59(a)(7) where prejudicial errors of law have occurred, even though the verdict is supported by substantial and competent evidence. *Id.; Sherwood v. Carter,* 119 Idaho 246, 261, 805 P.2d 452, 467 (1991).

Rockefeller asserts the district judge committed three errors of law which justify a new trial: allowing the Grabows to present expert testimony on lost profits, excluding Rockefeller's experts who would testify on the fiduciary duties of real estate agents, and instructing the jury on punitive damages.

### A. The District Judge Did Not Err In Allowing The Grabows To Present Evidence Of Lost Profits.

Rockefeller argues the district judge erred in allowing the Grabows to present evidence of lost profits because termination was the exclusive remedy provided by the Agreement for a breach of the best efforts clause. We

will not address this issue because it was raised for the first time on appeal. *Smith v. Meridian Joint School District No. 2*, 128 Idaho 714, 720, 918 P.2d 583, 589 (1996).

██ Rockefeller also argues the damages due to lost sales are too speculative to be proper contract damages. The evidence, however, was admitted not for the purposes of proving contract damages, but to prove tort damages. When the district judge ruled on Rockefeller's motion before the trial he noted: "Rockefeller loses sight of the tort action for which the Grabows claim damages. Grabows are entitled to present expert evidence supporting their claims of damage for Rockefeller's breach of fiduciary duty." The Grabows did not request jury instructions relating to the breach of contract claim and none were given. Since the damages evidence was admitted for the purpose of showing tort damages, not contract damages, Rockefeller's argument is not persuasive.

██ Rockefeller contends there was an improper foundation for the expert's testimony because the method he used in figuring the amount of damages failed to account for alternative causes for the lack of sales. The Grabows' expert was an economics professor who had talked with several people involved in the Teton real estate business; reviewed the deed registry; and then applied common economic principles to the facts. Given the expert's qualifications and the use of common economic principles to the facts, the district judge did not abuse his discretion in admitting the evidence.

██ Rockefeller next argues the Grabows' claim for lost interest on sales proceeds resulted in double recovery because the land itself was an appreciating asset. Rockefeller, however, was allowed to present evidence on the increase in land prices. Rockefeller was free to argue to the jury that the lost interest was more than made up for by increases in land prices. This is clearly an issue of fact the district judge properly presented to the jury for its consideration. In addition, given the small award the Grabows actually received in relation to the $434,370 they requested, it appears that the jury did offset the claim for interest by the increase in land prices.

██ Rockefeller also contends the trial court impermissibly mixed theories of contract and tort damages by instructing the jury to award the Grabows lost profits attributable to the breach of fiduciary duty, which is a tort claim. The basis of Rockefeller's argument is that since the only measure of damages in a breach of fiduciary duty claim is the commission earned by the agent, the theories must have been mixed.

██ In support of his contention, Rockefeller cites to *Cooke v. Iverson*, 94 Idaho 929, 500 P.2d 830. *Cooke*, however, only states the district judge properly denied the real estate agent his commission, it does not hold that this is the only measure of damages. In *Perkins v. Thorpe*, 106 Idaho 138, 141, 676 P.2d 52, 55 (1984), the Court of Appeals found a "[b]reach of fiduciary duty may result in the broker's loss of a commission and in liability for damages." This approach is consistent with the approach taken by the RESTATEMENT (SECOND) OF AGENCY § 401: "An agent is subject to liability for loss caused to the principal by any breach of duty." Since losses incurred by the principal as a result of a breach of fiduciary duty are an appropriate form of damages, the district judge was not mixing theories of recovery.

██ Finally, Rockefeller claims that punitive damages cannot be awarded where there is no actual monetary loss. Rockefeller argues that because the Grabows were not entitled to lost profit damages, they suffered no loss and, therefore, could not recover punitive damages. As already discussed, loss to the principal is an appropriate remedy for a breach of a fiduciary duty. Therefore, even if Rockefeller were right, the Grabows were awarded damages upon which to base the award of punitive damages.

## B. The District Judge Did Not Err In Excluding Rockefeller's Expert Testimony Regarding Fiduciary Duties Between Real Estate Broker And Client.

██ Failure to admit evidence is an error in law, occurring at the trial. *Highland Enterprises, Inc. v. Barker*, 133 Idaho 330, 345,

986 P.2d 996, 1011 (1999). This Court reviews trial court decisions admitting or excluding evidence for an abuse of discretion. *Id.*

The threshold test for the admission of expert testimony is whether the scientific, or other specialized knowledge of the expert will assist the trier of fact to understand the evidence or to determine a fact in issue. *See* I.R.E. 702. The function of the expert is to provide testimony on subjects that are beyond the common sense, experience and education of the average juror. *State v. Hester,* 114 Idaho 688, 694, 760 P.2d 27, 33 (1988) (quoting *State v. Lindsey,* 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986)). Where the normal experience and qualifications of lay jurors permit them to draw proper conclusions from given facts and circumstances, then expert conclusions or opinions are inadmissible. *Id.* at 696, 760 P.2d at 35 (quoting *State v. Lash,* 237 Kan. 384, 385, 699 P.2d 49, 51 (1985)). The district judge excluded Rockefeller's standard of care experts because such testimony would be cumulative and confusing to the jury.

The standard of care of an agent is clearly established by prior case law of this Court. *See, e.g., Mallory v. Watt,* 100 Idaho 119, 122, 594 P.2d 629, 632 (1979). As an agent, Rockefeller owed the Grabows a duty of loyalty, good faith and fair dealing. Although the facts of this case are different from previous cases, the jury could readily apply the facts to the legal standard without the assistance of expert testimony.

**C.  The District Judge Did Not Err In Instructing The Jury On Punitive Damages.**

The improper submission of the issue of punitive damages to the jury is an error of law, occurring at trial. *Highland Enterprises Inc.,* 133 Idaho at 348, 986 P.2d at 1014; I.R.C.P. 59(a)(7). This Court reviews the trial court's decision to submit the issue of punitive damages to the jury for an abuse of discretion. *Highland Enterprises Inc.,* 133 Idaho at 348, 986 P.2d at 1014 (citing *Student Loan Fund of Idaho Inc. v. Duerner,* 131 Idaho 45, 52, 951 P.2d 1272, 1279 (1998)). In determining whether the trial court abused its discretion this Court will consider whether substantial evidence supports submitting the issue to the jury. *Id.* The evidence must show the defendant

acted in a manner that was "an extreme deviation from reasonable standards of conduct, and ... with an understanding or disregard for its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud or gross negligence."

*Cheney v. Palos Verdes Investment Corp.,* 104 Idaho 897, 905, 665 P.2d 661, 669 (1983) (citations omitted).

Rockefeller challenges the district judge's determination that a jury could find Rockefeller was "working actively against Grabows' interests," and "favored Linn over Grabows, thereby violating his fiduciary duty to Grabows." The substance of Rockefeller's argument is simply an attempt to get this Court to second-guess the jury's determination that Rockefeller violated his fiduciary duties. On appeal, we consider whether a jury could award punitive damages based upon the evidence presented at trial, not whether we would have awarded punitive damages.

The evidence submitted at trial could lead a jury to conclude that while Rockefeller was the Grabows' agent, he misrepresented to them the commission typical to the marketplace; took on the representation of a piece of property, the sale of which eventually depended upon winning a lawsuit against the Grabows; helped set up a means whereby Linn could afford to sue the Grabows; and shared information about the Grabows' bargaining position with Staten and Linn while keeping all information from Linn and Staten confidential. The evidence supporting these possible conclusions constitutes sufficient evidence from which a jury could decide Rockefeller purposefully favored Linn over the Grabows in order to earn a commission on the sale between Linn and Staten. The district judge properly submitted the issue of punitive damages to the jury.

648

## V.

### CONCLUSION

We reverse the grant of summary judgment to Rockefeller on the issue of development commissions because there existed material issues of fact concerning the breaches of fiduciary duty. Since a jury has now determined Rockefeller violated his fiduciary duties, the issue is remanded to the district judge for a determination of whether Rockefeller should forfeit all, or just a portion, of his commission. The grant of attorney fees to Rockefeller is vacated. The denial of the Grabows' attorney fees is affirmed because the fees incurred in proving the breach of fiduciary duty were not apportioned between the affirmative defense in the contract action and the tort cause of action in the counterclaim. The district judge did not err in admitting the Grabows' expert testimony relating to lost profits where the evidence was used to prove tort damages. The district judge also did not err in excluding Rockefeller's standard of care expert testimony and instructing the jury on punitive damages. We, therefore, affirm the denial of Rockefeller's Rule 59(a)(7) motion for a new trial. We award costs on appeal to the Grabows.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN concur.