69 P.3d 100

**Robert MEIKLE, an individual;  Rex and Vernita B. Meikle, husband and wife, Plaintiffs–Respondents,**

**v.**

**Torry WATSON, an individual, Defendant–Appellant.**

No. 27408.

Supreme Court of Idaho, Boise, March 2003 Term.

April 18, 2003.

Cooper & Larsen, Pocatello, for appellant. Gary L. Cooper argued.

Meuleman & Miller, Boise, for respondents. Jeffrey R. Sykes argued.

SCHROEDER, Justice.

Torry Watson asks the Court to reverse the district court's order for summary judgment in favor of Robert, Rex, and Vernita B. Meikle, denying Watson's request for specific performance of a land sale contract. The decision of the district court is affirmed.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The property in controversy is approximately 27 acres of land in Bonneville County. On March 14, 1986, Rex and Vernita Meikle purchased 5 acres of the 27, known as the southern tracts, from Earnest Hackman. Robert Meikle, Rex and Vernita's son, purchased the remaining 22 acres from Grace Garret on the same day. This section was known as the northern and central tracts. In 1995 Robert assigned his interest in the northern and central tract to his parents by a quitclaim deed that was recorded that year. Rex and Robert made an oral agreement that Robert would continue to have an interest in the property. This agreement was never reduced to writing, and there is no evidence as to what the terms were. In 1999 the original warranty deed to Robert was released from escrow and recorded. The district court determined that by the doctrine of after acquired title, Rex and Vernita became the recorded owners of the whole 27 acres. Robert's interest was not formalized in any way.

Late in 1999 Watson approached the Meikles for a possible sale of the 27 acres, stating that he wanted to purchase the land on behalf of his rich uncle. In fact Watson was seeking to arrange a sale of the land for the benefit of Ronald Walker, who is not related to Watson. Walker held the first rights to purchase the Meikles' land through a limited liability company and is an adjacent property owner with ambitions of developing the Meikle property. Watson was negotiating the land sale agreement to either trigger

the right of first refusal or a sale of the land to him which he would transfer to Walker in hopes of receiving some compensation. There was no enforceable agreement between Watson and Walker empowering Watson to act as Walker's agent. There was no written agreement. Watson and Walker had not reached a specific understanding. Watson was apparently acting with mixed motives, as a friend of Walker and with a hope of some form of reward if he were able to either acquire the right to .the property to pass to Walker or trigger the right of first refusal held by Walker's limited liability company. Watson had no use for the property himself.

Watson presented Rex and Vernita Meikle with a contract for sale of the land. Their attorney made some handwritten changes to the contract which had a map of the property attached to it. The parties dispute whether there was a legal description attached. Rex told Watson that Robert had an interest in the land, but that Robert would go along with the sale. Rex and Vernita signed the contract, but Robert objected to the sale. Rex and Vernita attempted to avoid the agreement.

The Meikles' filed an action for declaratory judgment to determine that the contract they signed was unenforceable and to have title quieted to the real property as against any interest of Watson. Watson answered and filed a counter-claim for specific performance of the contract and damages for the breach of express and implied covenants of good faith and fair dealing. Both sides moved for summary judgment. The district court granted summary judgment in favor of the Meikles, dismissing Watson's counterclaim with prejudice. The district court reasoned that since both sides agreed that Watson was not seeking to buy the land for his own use but was to resell it, the remedy of specific performance was not available to him, relying on *Watkins v. Paul,* 95 Idaho 499, 511 P.2d 781 (1973), which allowed only monetary damages for such instances. Watson had declared that the money damages he was seeking were only "out of pocket expenses" in pursuit of the matter. The district court found these expenses were not recoverable

since Watson would not prevail on summary judgment. The district court noted that summary judgment could have been avoided if Watson had alleged damages related to the breach of the contract. The district court then declared all other matters moot and awarded costs and attorney fees in the amount of $42,865.25 to the Meikles under I.C. § 12–120(3). This appeal followed.

## II.

## THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE MEIKLES

### A. Standard of Review

When faced with an appeal from a lower court's grant of a summary judgment motion, this Court reviews the lower court's ruling by employing the same standard properly applied by the lower court when originally ruling on the motion. *Featherston v. Allstate Ins. Co.,* 125 Idaho 840, 842, 875 P.2d 937, 939 (1994) (quoting *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994)). Summary judgment shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Friel v. Boise City Hous. Auth.,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). If reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence, summary judgment must be denied. *Harris v. Department of Health & Welfare,* 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992). However, if the evidence reveals no disputed issues of material fact, then summary judgment should be granted. *Loomis v. City of Hailey,* 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991).

The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for sum-

mary judgment. *Tingley v. Harrison,* 125 Idaho 86, 89, 867 P.2d 960, 963 (1994). In order to meet its burden, the moving party must challenge in its motion and establish through evidence the absence of any genuine issue of material fact on an element of the nonmoving party's case. *Thomson v. Idaho Ins. Agency, Inc.,* 126 Idaho 527, 530, 887 P.2d 1034, 1038 (1994). If the moving party fails to challenge an element or fails to present evidence establishing the absence of a genuine issue of material fact on that element, the burden does not shift to the nonmoving party, and the nonmoving party is not required to respond with supporting evidence. *Id.* If the moving party challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to come forward with sufficient evidence to create a genuine issue of fact. *Tingley,* 125 Idaho at 90, 867 P.2d at 964. Summary judgment is properly granted in favor of the moving party when the nonmoving party fails to establish the existence of an element essential to that party's case upon which that party bears the burden of proof at trial. *Thomson,* 126 Idaho at 530–31, 887 P.2d at 1037–38; *Badell v. Beeks,* 115 Idaho 101, 102, 765 P.2d 126, 127 (1988). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). If the nonmoving party does not come forward with evidence as provided in I.R.C.P. 56(e), then summary judgment, if appropriate, shall be entered against the party. *Id.; State v. Shama Resources Ltd. Partnership,* 127 Idaho 267, 270, 899 P.2d 977, 980 (1995).

*Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 718–19, 918 P.2d 583, 587–88 (1996).

**B. Summary Judgment**

▆ The district court relied upon *Watkins v. Paul,* 95 Idaho 499, 511 P.2d 781 (1973), to determine that the agreement between Watson and the Meikles is not enforceable by specific performance. Watkins had purchased an option of first refusal on a tract of land that the owner eventually attempted to sell through an exclusive purchase agreement to a third party. *Id.* at 499–500, 511 P.2d at 781–82. The owner refused to sell to Watkins on the grounds that the option would not be effective until the third party exercised his exclusive purchase option. *Id.* at 500, 511 P.2d at 782. The Court noted that the rule of equity that equitable remedies will not be allowed if adequate ones are available at law, is reversed in land transactions because of the presumed unique, irreplaceable quality of land. Courts may assume adequate remedies at law are not available, allowing equitable remedies to be considered first. *Id.* at 501, 511 P.2d at 783. However, the Court noted that Watkins sought to obtain the land only to resell it and did not need it for a specific purpose. *Id.* Thus, the Court concluded that under "these circumstances, specific performance would bring the plaintiffs no greater relief than would damages in the amount of their lost profit." *Id.* In this case Watson also wished to resell the property. He alleges its value is unique despite his desire to resell because of the property's proximity to the ultimate buyer. However, Watson did not seek damages for the alleged breach of contract.

*Watkins* turned on the point that the aggrieved party had recourse to legal damages in lieu of specific performance with regard to resale property. The district court applied the reasoning of *Watkins* to this case. Under the limited circumstances of this case that is appropriate. Watson had no need for the property. His intent was to do a favor and hopefully secure a benefit from Walker. This case does not implicate the enforceability of the purchases of property for an undisclosed principal or a partially disclosed principal. There was no agency agreement between Walker and Watson. Walker was not bound to do anything and is not a party to this action. The special needs that Walker might have for this property are not relevant.

▆ Watson complains that the language of the district court's ruling seems to grant

quiet title to the Meikles. The district court states:

> Further, because the Meikles' complaint seeks only a declaration under the Declaratory Judgment Act that the contract cannot be specifically enforced in equity, or to quiet title against any interest in the real property as against Watson, summary judgment should also be granted on the complaint.

This ruling effectively quiets title to the Meikles. This is appropriate once it was determined that specific performance was not available as a remedy and Watson could not identify and did not seek money damages. Otherwise a cloud on title to the property would exist with no purpose or enforceable right.

### III.

### ATTORNEY FEES

Idaho Code § 12–120(3) states:

In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

The controversy in this case involves a contract for the sale of property meant for resale. The contract is commercial in nature, and the award of attorney's fees was proper in the district court and in this Court on appeal.

Watson challenges the amount awarded, claiming that $6,780 of the fees awarded were for work done before the case was filed, $3,400 of fees were awarded in relation to a motion filed by the Meikles that they already received $150 for, $2,341 of the fees were awarded pursuant to mediation efforts that each side should pay on its own, $1,500.50 of fees were awarded for work done requesting attorney's fees that should not be granted, and $293.12 of the fees were for Westlaw work that cannot be attributed to this case. Watson also claims that the $33,429 left by his accounting is too high, noting that the Meikles' attorney spent 37.5 hours writing jury instructions and a trial brief, work largely done from the briefing for the summary judgment motion.

The Meikles respond that the district court did not abuse its discretion since it used that discretion to lower the initial request by almost $8,000 through an extensive examination of the factors outlined in I.R.C.P 54(d)(1) and 54(e)(3).

An examination of the district court's decision regarding attorney fees reflects a considered effort in determining an appropriate measure of attorney fees. There was no abuse of discretion in fixing the amount.

### IV.

### CONCLUSION

The order for summary judgment and the order determining attorney fees are affirmed. The Meikles are awarded costs and attorney fees on appeal.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.