# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49693-2022

LAURA MILUS, in her individual capacity
and as Guardian of the Minor Child Plaintiff,
D.L.J.,

    Plaintiff-Appellant,

v.

SUN VALLEY COMPANY, a Wyoming
corporation,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Docket No. 49693-2022

Opinion filed: June 25, 2025

<u>SUBSTITUTE OPINION</u>
THE COURT'S PRIOR
OPINION DATED DECEMBER 19,
2023, IS WITHDRAWN

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho,
Blaine County. Ned C. Williamson, District Judge.

The decision of the district court is <u>affirmed</u>.

Rossman Law Group, PLLC, Boise, for Appellant. Mathew G. Gunn argued.

Lake City Law Group PLLC, Coeur d'Alene, for Respondent. Katharine B.
Brereton argued.

Elam & Burke, P.A., Boise, for Respondent on Rehearing. Jaclyn T. Gans argued
on rehearing.

---

ZAHN, Justice.

This case concerns the interpretation of the Responsibilities and Liabilities of Skiers and
Ski Area Operators Act ("Ski Area Liability Act" or "Act"). Laura Milus, on behalf of herself and
her minor son, D.L.J. (collectively "Milus"), brought a wrongful death action against Sun Valley
Company ("Sun Valley") after her husband ("Mr. Milus") died following his collision with
snowmaking equipment while skiing at the Sun Valley Ski Resort.

Milus alleged that Sun Valley had breached a duty arising under Idaho Code section 6-
1103(2) and (6). Sun Valley moved for summary judgment. The district court granted the motion
and dismissed Milus' claims. The district court concluded that Sun Valley was not held to any
standard of care when performing its duties under the Act, that Sun Valley fulfilled its duty under
Idaho Code section 6-1103(2) by placing yellow padding on the snowmaking equipment, and that

it did not have a duty under Idaho Code section 6-1103(6) because the snowmaking equipment was not actively discharging snow.

We reversed the grant of summary judgment and remanded for further proceedings. Sun Valley filed a Petition for Rehearing, which this Court granted. On rehearing, we hold that ski area operators are held to an ordinarily prudent person standard of care when undertaking the duties enumerated in the Ski Area Liability Act. Although we reverse the district court's decision to the extent it concluded that Sun Valley was not held to any particular standard of care in performing its duty under section 6-1103(2), we hold that Milus failed to create a genuine issue of material fact that Sun Valley failed to meet an ordinarily prudent person standard of care when it marked the snowmaking equipment with yellow padding.

We further hold that the district court erred when it dismissed Milus' claim under section 6-1103(6) because the statute required a notice be posted in this instance and Milus established a genuine issue of material fact concerning whether the required notice was posted at or near the top of the run in question. However, we affirm the district court's decision dismissing Milus' claim on an alternative basis not addressed by the district court: that Milus' claim is barred by section 6-1106 because Mr. Milus assumed the risk resulting from snowmaking equipment that was "plainly visible or plainly marked in accordance with the provisions of section 6-1103, Idaho Code." Therefore, we affirm the district court's grant of summary judgment and the dismissal of Milus' claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 2019, Mr. Milus was skiing at the Sun Valley Ski Resort when he collided with snowmaking equipment identified as Snow Gun 16, located in the middle of the Lower River Run on Bald Mountain. Mr. Milus died as a result of the collision. Snow Gun 16 was not actively discharging snow at the time of the collision.

Laura Milus is the widow of Mr. Milus and D.L.J. is his stepson. They filed a wrongful death action against Sun Valley Company, which operates the Sun Valley Ski Resort, alleging that Sun Valley breached its duties under Idaho Code section 6-1103(2) and (6). Idaho Code section 6-1103(2) imposes a duty on ski area operators to mark with a "visible sign" or "warning implement" the location of snowmaking equipment on ski slopes and trails. Idaho Code section 6-1103(6) imposes a duty to place a conspicuous notice at or near the top of a trail or slope that is open to the public when snowgrooming or snowmaking operations are being undertaken.

2

Sun Valley filed a motion for summary judgment, arguing that it had satisfied its duty under Idaho Code section 6-1103(2) because it covered Snow Gun 16 in yellow padding, which constituted a warning implement. Additionally, Sun Valley argued that it had no duty under Idaho Code section 6-1103(6) to place a notice at the top of the Lower River Run because no snowmaking was being actively undertaken on the day of the collision. Sun Valley further argued that, even if it did have this duty, it complied with that duty by placing a sign that read "CAUTION SNOWMAKING IN PROGRESS" near what Sun Valley contends is the unloading area of the River Run ski lift. Alternatively, Sun Valley argued that Milus' claims were barred under Idaho Code section 6-1106 because Mr. Milus had assumed the risk of injury while skiing.

The district court granted Sun Valley's motion for summary judgment after concluding that the yellow padding on Snow Gun 16 satisfied the duty under section 6-1103(2). The district court interpreted section 6-1103(6) to create a duty only when snowmaking equipment is actively discharging snow and allowed discovery to take place regarding whether snow was being made on the day of the accident. Following discovery, the district court granted Sun Valley's renewed motion for summary judgment regarding section 6-1103(6) and concluded that Sun Valley had no duty to place a notice at or near the top of the ski run because there was no snowmaking occurring at the time of the accident. Having dismissed Milus' claims on these grounds, the district court did not render a decision on Sun Valley's section 6-1106 argument. Milus timely appealed the final judgment.

## II.     ISSUES ON APPEAL

1. What is the standard of care that ski area operators are held to when undertaking the duties enumerated in Idaho Code section 6-1103(1) through (9).

2. Whether the district court properly granted summary judgment in favor of Sun Valley on Milus' claim concerning Idaho Code section 6-1103(2).

3. Whether the district court properly granted summary judgment in favor of Sun Valley on Milus' claim concerning Idaho Code section 6-1103(6).

4. Whether Milus' claims were barred by Idaho Code section 6-1106.

5. Whether Sun Valley is entitled to attorney fees on appeal.

## III.     STANDARD OF REVIEW

"The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion." *Berglund v. Dix*, 170 Idaho 378, 384, 511 P.3d 260, 266 (2022) (quoting *Hoke v. Neyada, Inc.*, 161 Idaho 450,

453, 387 P.3d 118, 121 (2016)). The trial court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Manning v. Micron Tech., Inc.*, 170 Idaho 8, 12, 506 P.3d 244, 248 (2022). "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Finholt v. Cresto*, 143 Idaho 894, 897, 155 P.3d 695, 698 (2007) (quoting *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005)). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Arambarri v. Armstrong*, 152 Idaho 734, 738, 274 P.3d 1249, 1253 (2012).

## IV.    ANALYSIS

Milus argues that we should reverse the district court's decision because section 6-1103(6) did apply in this instance and because Milus established genuine issues of material fact concerning whether Sun Valley satisfied its duties under section 6-1103(2) and (6). In response, Sun Valley argues we should affirm the district court because (1) it correctly concluded that the yellow padding was a warning implement that satisfied Sun Valley's duty under section 6-1103(2); (2) it correctly concluded that Sun Valley had no duty to place a notice at or near the top of the ski run under section 6-1103(6) because there was no snowmaking occurring at the time of the accident; and (3) Milus' claims are barred because Mr. Milus assumed the risk of colliding with Snow Gun 16 under section 6-1106. Milus replies that Sun Valley's arguments regarding section 6-1106 are unpreserved and would eviscerate the duties of ski area operators provided for in section 6-1103. The district court only rendered a decision on Sun Valley's duties under section 6-1103(2) and (6) and declined to address Sun Valley's assumption of risk argument. We begin by reviewing the analysis contained in the district court's decision.

**A. Ski area operators are held to an ordinarily prudent person standard of care when undertaking the duties enumerated in Idaho Code section 6-1103(1) through (9).**

Milus alleges that Sun Valley was negligent because it failed to comply with two duties imposed by the Act. The Act addresses the liability of ski area operators in Idaho Code section 6-1107:

> LIABILITY OF SKI AREA OPERATORS. Any ski area operator shall be liable
> for loss or damages caused by its failure to follow the duties set forth in sections 6-

4

1103 and 6-1104, Idaho Code, where the violation of duty is causally related to the loss or damage suffered. The ski area operators shall not be liable to any passenger or skier acting in violation of their duties as set forth in section 6-1105 and 6-1106, Idaho Code, where the violation of duty is causally related to the loss or damage suffered; nor shall a ski area operator be liable for any injury or damage to a person who is not legally entitled to be in the ski area; or for any loss or damages caused by any object dropped, thrown or expelled by a passenger from an aerial passenger tramway.

I.C. § 6-1107. Milus asserts that Sun Valley is liable for Milus' damages resulting from the death of Mr. Milus because it violated the duties contained in section 6-1103(2) and (6). Section 6-1103(2) and (6) impose duties on ski area operators with respect to snowmaking equipment located on ski slopes or trails:

DUTIES OF SKI AREA OPERATORS WITH RESPECT TO SKI AREAS. Every ski area operator shall have the following duties with respect to their operation of a skiing area:

. . . .

(2) To mark with a visible sign or other warning implement the location of any hydrant or similar equipment used in snowmaking operators and located on ski slopes or trails;

. . . .

(6) To place, or cause to be placed, whenever snowgrooming or snowmaking operations are being undertaken upon any trail or slope while such trail or slope is open to the public, a conspicuous notice to that effect at or near the top of such trail or slope[.]

I.C. § 6-1103(2), (6).

Sun Valley moved to dismiss Milus' claim on summary judgment. Sun Valley argued that this Court interpreted the Act to not require that Sun Valley meet any standard of care when undertaking the duties imposed by section 6-1103. On the duty imposed by section 6-1103(2), it asserted that the yellow padding it placed on the snowmaking gun was a warning implement that satisfied the duty. On the duty imposed by section 6-1103(6), it argued that the duty did not apply because snow was not being made at the time of Mr. Milus' accident. Sun Valley further argued that, even if the duty applied, it satisfied the duty by placing a sign at the unloading area for the Lower River Run.

In its decision granting Sun Valley's motion as to section 6-1103(2), the district court cited this Court's decision in *Northcutt v. Sun Valley Co.*, 117 Idaho 351, 787 P.2d 1159 (1990) (plurality), for the premise that "Sun Valley did not have any duty to mark snowmaking equipment

5

with a 'warning implement' to any standard of care." The district court determined that Sun Valley's placement of bright yellow pads on the snowmaking gun fulfilled its duty under section 6-1103(2) and dismissed Milus' negligence claim alleging a violation of that duty.

On appeal, Milus argues that the district court erred in concluding that, as a matter of law, the yellow padding constituted a warning implement under section 6-1103(2). Milus contends that this was a question of fact, and the jury should have determined whether the yellow warning padding was an implement. However, before we reach this issue, we must first address the standard of care applicable to Sun Valley's performance of the duty imposed by section 6-1103(2).

We hold that the Act imposes duties on ski area operators and that those operators are held to an ordinarily prudent person standard of care when performing those duties. In concluding otherwise, the district court relied on this Court's decision in *Northcutt*. In that case, a majority of justices held that the Ski Area Liability Act limits the liability of ski area operators to the enumerated duties in section 6-1103(1) through (9) when acting to eliminate, alter, control or lessen the inherent risks of skiing. *See* 117 Idaho at 354–55, 787 P.2d at 1162–63. However, only a plurality of two justices, relying on section 6-1103(10), stated they would hold that the Act eliminates any standard of care for a ski area operator when undertaking any of the duties found in subsections (1) through (9). *See id.* at 355, 787 P.2d at 1163 (plurality) ("We construe the last clause of this portion of [Idaho Code section] 6-1103(10) to eliminate any standard of care for a ski area operator in carrying out any of the duties described in [Idaho Code sections] 6-1103 and 6-1104."); *but see id.* at 358, 787 P.2d at 1166 (Bakes, J., specially concurring) (noting, "in my view there would have been a violation of the duty provided in [section] 6-1103(3) for which liability would be imposed under [Idaho Code section] 6-1107, and *which would not have been excused by* [Idaho Code section] 6-1103(10)" (emphasis added)).

We conclude that the district court erred in treating the two-justice plurality as a majority decision of this Court. We further hold that the plain language of section 6-1103(10) only eliminates a standard of care with regard to activities undertaken in addition to those identified in 6-1103(1) through (9) and which are undertaken for the purpose of attempting to eliminate, alter, control, or lessen the inherent risks of skiing. Put differently, the plain language of section 6-1103(10) did not eliminate a standard of care for the performance of those duties imposed in section 6-1103(1) through (9).

"Statutory interpretation is a question of law over which this Court exercises free review." *Est. of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017) (quoting *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 748, 274 P.3d 1256, 1263 (2012)). "Statutory interpretation begins with the literal language of the statute. If the statutory language is unambiguous, we need not engage in statutory construction and are free to apply the statute's plain meaning." *Nordgaarden v. Kiebert*, 171 Idaho 883, 890, 527 P.3d 486, 493 (2023) (alteration omitted) (quoting *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009)). "However, if the statutory language is ambiguous, this Court must 'look to rules of construction for guidance and consider the reasonableness of proposed interpretations.' " *Id.* (quoting *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 582, 416 P.3d 951, 954 (2018)). "Statutory language is ambiguous where reasonable minds might differ or be uncertain as to its meaning." *Id.* (alteration omitted) (quoting *H-K Contractors, Inc.*, 163 Idaho at 582, 416 P.3d at 954).

Turning to the statutory language in question, section 6-1103(10) states a general duty to not injure others and then describes exceptions to that duty:

> DUTIES OF SKI AREA OPERATORS WITH RESPECT TO SKI AREAS. Every ski area operator shall have the following duties with respect to their operation of a skiing area:
>
> . . . .
>
> (10) Not to intentionally or negligently cause injury to any person; provided, that except for the duties of the operator set forth in subsections (1) through (9) of this section and in section 6-1104, Idaho Code, the operator shall have no duty to eliminate, alter, control or lessen the risks inherent in the sport of skiing, which risks include, but are not limited to, those described in section 6-1106, Idaho Code; and, that no activities undertaken by the operator in an attempt to eliminate, alter, control or lessen such risks shall be deemed to impose on the operator any duty to accomplish such activities to any standard of care.

I.C. § 6-1103(10). Section 6-1103(10) does several things and is far from a study in clarity. However, when its clauses are separated, it is clear that the subsection contains a duty and then an exception. The exception is expressed in three separate clauses that distinguish between the <u>duties</u> imposed in subsections (1) through (9) and <u>activities</u> voluntarily undertaken:

- "except for the *duties* of the operator set forth in subsections (1) through (9) of this section and in section 6-1104, Idaho Code,"
- "the operator *shall have no duty* to eliminate, alter, control or lessen the risks inherent in the sport of skiing, which risks include, but are not limited to, those described in section 6-1106, Idaho Code; and,"

- "that no *activities* undertaken by the operator in an attempt to eliminate, alter, control or lessen such risks *shall be deemed to impose on the operator any duty* to accomplish *such activities* to any standard of care."

*See* I.C. § 6-1103(10) (emphasis added).

The first two clauses of the exception provision establish that the only <u>duties</u> imposed on ski area operators to eliminate, alter, control or lessen the risks inherent in the sport of skiing are those expressly set forth in subsections (1) through (9). The third clause provides that, to the extent a ski area operator opts to voluntarily undertake <u>activities</u> "in an attempt to eliminate, alter, control or lessen" the inherent risks of skiing, those activities do not impose any <u>duty</u> to accomplish the <u>activities</u> to any standard of care. Subsection (10) thus differentiates between the <u>duties</u> enumerated in subsections (1) through (9) and <u>activities</u> not included in the enumerated duties. Subsection (10) only eliminates a standard of care for the <u>activities voluntarily undertaken</u>.

To eliminate the standard of care for the duties enumerated in subsections (1) through (9), as Sun Valley argues, would impermissibly read these duties out of the statute. For example, subsection (3) imposes a duty "[t]o mark conspicuously the top or entrance to each slope or trail or area, with an *appropriate* symbol for its relative degree of difficulty," and subsection (8) imposes a duty "[t]o provide a ski patrol with qualifications meeting the *standards of the national ski patrol system*." *See* I.C. § 6-1103(3), (8) (emphasis added). We "will not construe a statute in a way which makes mere surplusage of provisions included therein." *Sweitzer v. Dean*, 118 Idaho 568, 572, 798 P.2d 27, 31 (1990) (citation omitted). For these reasons, we hold that the plain language of subsection (10) does not eliminate the standard of care for the duties enumerated in subsections (1) through (9).

Sun Valley argues that, if we disagree with the two-justice plurality in *Northcutt*, then we should conclude that section 6-1103(10) is ambiguous. Sun Valley contends that when section 6-1103(10) is interpreted in keeping with the legislative purpose contained in section 6-1103(1), it becomes clear that subsection (10) eliminates the standard of care for the duties in subsections (1) though (9). We reject this argument because the plain language of section 6-1103(10) is clear and unambiguous. It only eliminates a standard of care for activities voluntarily undertaken, not the statutorily enumerated duties.

Sun Valley argues that the two-justice plurality decision in *Northcutt* was subsequently adopted by a majority of this Court in two decisions: *Long v. Bogus Basin Recreational Association, Inc.*, 125 Idaho 230, 869 P.2d 230 (1994), and *Withers v. Bogus Basin Recreational*

*Association, Inc.*, 144 Idaho 78, 156 P.3d 579 (2007). We disagree. Neither decision expressly nor impliedly held that section 6-1103(10) eliminates a standard of care for the performance of those duties identified in section 6-1103(1) through (9).

Sun Valley argues that our decision in *Long* decided the issue under a heading titled, "The Common Law Standard of Care is Eliminated by the Skier Statute." 125 Idaho at 233, 869 P.2d at 233. A review of the discussion following this heading reveals that this Court was discussing a different standard of care, not the standard applicable to duties arising under the Act. In the discussion following the heading, this Court noted that Long argued that he was owed the ordinary common law standard of care for a business invitee because he was skiing on an undesignated trail and therefore he did not meet the Act's definition of a "skier." *Id.* We rejected Long's argument and held that "the skier statute establishes the duties and the standard of care for skiers and ski operators." *Id.* At no point did we hold that the Act eliminated any standard of care for the duties it imposes.

Sun Valley next directs our attention to a parenthetical from our decision in *Withers* as evidence that we held that section 6-1103(10) eliminated the standard of care:

> The common law standard of care with respect to non-skiing-related functions remains, but the operator is absolved of responsibility to protect skiers from the hazards of skiing except as enumerated in the statute. *See* [*Davis v. Sun Valley Ski Educ. Found., Inc.*, 130 Idaho 400, 403, 941 P.2d 1301, 1304 (1997)] (recognizing that the statutory enumerated duties are exclusive); *Long*, 125 Idaho at 233, 869 P.2d at 233 (*recognizing that the statute eliminates the common law standard of care*).

144 Idaho at 81, 156 P.3d at 582 (emphasis added). *Withers* did not concern the standard of care applicable to section 6-1103(1) through (9) but instead whether a rope configuration was set up in response to an inherent risk of skiing. *See id.* We ultimately held that the rope was intended to eliminate, alter, control or lessen a risk inherent in the sport of skiing and therefore the plaintiff's claims were barred by section 6-1106, which provides that the responsibility for skier collisions while skiing is solely that of the skier and not the ski area operator. *Id.* at 81–82, 156 P.3d at 582–83. The parenthetical reference concerning *Long* was neither a holding nor integral to our conclusion that the plaintiff's claim was barred by section 6-1106. As a result, we are unpersuaded that our decision in *Withers* held that section 6-1103(10) eliminated any standard of care for the duties enumerated in section 6-1103.

Having determined that ski area operators are held to a standard of care when performing the duties enumerated in sections 6-1103(1) through (9), we turn to identifying that standard of care. "The second element of a negligence cause of action, that of breach of duty by the allegedly negligent party, requires measuring the party's conduct against that of an ordinarily prudent person acting under all the circumstances and conditions then existing." *Brooks v. Logan*, 127 Idaho 484, 490–91, 903 P.2d 73, 79–80 (1995), *superseded by statute on other grounds as recognized in Stoddart v. Pocatello Sch. Dist. #25*, 149 Idaho 679, 239 P.3d 784 (2010). "What circumstances and conditions existed is a factual question to be determined by the trier of fact." *Id.* at 491, 903 P.2d at 80. Therefore, we hold that ski area operators are held to the standard of an "ordinarily prudent person acting under all the circumstances and conditions then existing," *id.* at 490–91, 903 P.2d at 79–80, when complying with the duties enumerated in subsections (1) through (9).

**B. The district court did not err in granting summary judgment pursuant to section 6-1103(2) because Milus failed to establish a genuine issue of material fact concerning whether the yellow padding constituted a warning implement for purposes of the statute.**

Having determined the standard of care applicable to Milus' claim, we turn to the merits of the district court's decision. Milus argued that Sun Valley breached its duty under section 6-1103(2), which requires ski area operators to mark snowmaking equipment located on ski slopes and trails with a visible sign or warning implement. I.C. § 6-1103(2). Sun Valley conceded that it did not mark Snow Gun 16 with a visible sign but argued that the yellow padding on Snow Gun 16 constituted a warning implement. Milus argued that the question of whether the yellow padding constituted a warning implement was a question for the jury. The district court concluded that whether the yellow padding constituted a warning implement was a question of law for the court to decide and concluded that the yellow padding constituted a warning implement for purposes of the statute. We hold that the district court erred on this point because the question of whether the yellow padding constituted a warning implement is a question of fact for the jury.

The elements of a negligence action are "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171, 175–76, 804 P.2d 900, 904–05 (1991). The district court treated the question of whether the yellow padding constitutes a warning implement as an issue of duty. "The existence of a duty is a question of law for this Court." *Harrigfeld v. Hancock*, 140 Idaho 134, 138, 90 P.3d 884, 888 (2004).

We hold that the district court erred in this regard because whether the yellow padding constituted a "warning implement" is not an issue of duty, but rather one of breach. By enacting section 6-1103(2), the legislature imposed on Sun Valley a duty "[t]o mark with a visible sign or other warning implement the location of any hydrant or similar equipment used in snowmaking operations . . . ." *See* I.C. § 6-1103(2). Whether the yellow padding satisfied this duty is an issue of breach, which presents a question of fact for the jury. *See Stephens v. Stearns*, 106 Idaho 249, 256, 678 P.2d 41, 48 (1984) (holding that "it is a jury question as to whether [a] duty was breached"); *Freeman v. Juker*, 119 Idaho 555, 557, 808 P.2d 1300, 1302 (1991) (reversing the district court's grant of summary judgment because whether the highway district had breached its duty by not maintaining a runaway escape ramp was a disputed question of fact); *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 530, 887 P.2d 1034, 1037 (1994) (concluding that summary judgment should have been denied solely because triable disputed factual issues existed whether a duty was breached).

Despite the district court's error in this regard, we affirm its grant of summary judgment because Milus failed to establish that a genuine issue of material fact existed concerning whether the yellow padding constituted a "warning implement" under the statute. "Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory." *Dep't of Health & Welfare v. Beason*, 173 Idaho 672, 679, 546 P.3d 684, 691 (2024) (quoting *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019)). In support of its motion for summary judgment, Sun Valley submitted pictures of the yellow padding on Snow Gun 16 as evidence that the yellow padding constituted a warning implement. Milus presented a declaration by a ski area safety expert stating that snowmaking equipment should not be placed in the middle of a beginner level trail such as the Lower River Run. Sun Valley argues that the expert's opinion as to where snowmaking equipment should be located did not address the breach issue and therefore did not establish a genuine issue of material fact on the section 6-1103(2) claim. We agree.

The issue before the district court on summary judgment was whether the yellow padding constituted a warning implement that satisfied the duty contained in section 6-1103(2). Milus' expert gave no opinion on this point but instead opined concerning the location of snowmaking equipment. Section 6-1103(2) does not impose a duty on Sun Valley to place the equipment in a particular location. Milus provided no evidence that yellow padding failed to satisfy the ordinarily

11

prudent person standard of care for marking the snowmaking equipment with a warning implement. "[I]f the evidence reveals no disputed issues of material fact, the trial court should grant the motion for summary judgment." *Duncan v. Long*, 167 Idaho 853, 856, 477 P.3d 907, 910 (2020). While the issue of whether the yellow padding constituted a warning implement is a question of fact for the jury, Milus presented no evidence contesting Sun Valley's photographic evidence that the yellow padding constituted a warning implement that satisfied the ordinarily prudent person standard of care. Therefore, we affirm the district court's decision dismissing Milus' claim under section 6-1103(2).

## C. There is a genuine issue of material fact whether Sun Valley placed a conspicuous notice at or near the top of the Lower River Run trail on the day of the accident.

Milus also claims that Sun Valley breached its duty under Idaho Code section 6-1103(6), which requires ski area operators to place a "conspicuous notice" at or near the top of a ski trail or slope under certain circumstances:

> Every ski area operator shall have the following duties with respect to their operation of a skiing area:
>
> . . . .
>
> (6) To place, or cause to be placed, whenever snowgrooming or *snowmaking operations are being undertaken* upon any trail or slope while such trail or slope is open to the public, a conspicuous notice to that effect at or near the top of such trail or slope[.]

I.C. § 6-1103(6) (emphasis added).

The district court held that the statutory language, "snowmaking operations are being undertaken," is unambiguous and means "when snow is being made." The district court concluded that the purpose of subsection (6) is to warn skiers of changed snow conditions or reduced visibility due to active snowmaking operations. Because no snow was actively being discharged from Snow Gun 16 on the day of Mr. Milus' collision, the district court held that Sun Valley had no duty under section 6-1103(6) to place a notice at or near the top of the Lower River Run. Milus argues that the district court's interpretation is too narrow because snowmaking equipment is dangerous both when actively shooting snow and when not actively shooting snow if the snowmaking equipment is in the middle of a beginner ski run.

We conclude that, as used in section 6-1103(6), the phrase "snowmaking operations are being undertaken" is unambiguous and encompasses more than the discharge or production of snow. Interpreting subsection (6) as only applying when snow is being actively discharged would

12

effectively eliminate the word "operations" from the statute. The statute does not impose the duty when "snowmaking is being undertaken," rather the duty applies when "snowmaking *operations* are being undertaken." When interpreting a statute, this Court has an obligation to give effect to all the words and provisions so that none are rendered superfluous. *Moser v. Rosauers Supermarkets, Inc.*, 165 Idaho 133, 136, 443 P.3d 147, 150 (2019). The phrase "snowmaking operations" is broad enough to encompass situations where the ski area operator has equipment in place that allows it to produce snow on a moment's notice, not just situations where the operator is actively making snow.

For these reasons, we hold that subsection (6) creates a duty to warn skiers at the top of a ski slope or trail when the ski area operator has equipment in place that allows it to produce snow on a moment's notice. The district court rejected this interpretation after concluding it would be redundant because it would require two warnings for snowmaking equipment—one on the equipment itself, as required by subsection (2), and one at the top of the ski run, as required by our interpretation of subsection (6). This is not redundant—both warnings serve a purpose. Warning skiers at the top of the run advises them of dangerous obstacles on the ski run and warns them that visibility conditions may change. Providing a warning at or near the top of the ski slope or trail gives a skier the opportunity to choose a different ski run or to ski more cautiously, while a warning on or near the snowmaking equipment itself informs and warns the skier of the actual location of the snowmaking equipment on the ski run.

In light of our holding, the question now becomes whether there is a genuine issue of material fact as to whether Sun Valley complied with that duty. In support of its motion for summary judgment, Sun Valley submitted evidence that it placed a sign that read "CAUTION SNOWMAKING IN PROGRESS" at what it claims was the top of the River Run lift on the day of the accident. Sun Valley also submitted a declaration by Peter Stearns, the Director of Mountain Operations of Sun Valley Ski Resort, stating that, at all times during the ski season, the CAUTION SNOWMAKING IN PROGRESS sign is posted at the top of each ski lift. Additionally, Sun Valley presented a photograph showing the sign located at what it claims is the unloading area of the River Run lift and a ski trail map showing the location of the sign relative to the top of the Lower River Run.

In opposition to the motion, Ms. Milus submitted a declaration stating she did not see the sign on the day the accident occurred. Milus argued that it was possible the sign had been knocked

13

down on the day of the accident. Milus additionally argued that the picture of the sign presented by Sun Valley does not show that the sign was "at or near the top" of the Lower River Run.

The district court concluded that Ms. Milus' statement that she did not personally observe a sign constituted only a scintilla of evidence and did not preclude summary judgment. On appeal, Milus argues that the district court erred because the evidence established a genuine issue of material fact concerning whether Sun Valley breached its duty under section 6-1103(6). We agree with Milus.

We hold there is a genuine issue of material fact because Sun Valley's photographic evidence did not establish that the sign was at or near the top of the Lower River Run. The picture presented by Sun Valley shows the loading area of the Lookout Express lift. While Sun Valley's witness avers that this area is near the top of the Lower River Run, that fact is not clear from the photo itself. Moreover, the trail map presented by Sun Valley does not show the location of the sign or an accurate distance between the River Run lift unloading area and the top of the Lower River Run. Ms. Milus testified in her deposition that she did not see the sign on the day of the accident. As a result, there is a genuine issue of material fact whether Sun Valley's sign was located at or near the top of the Lower River Run.

However, this conclusion does not end our inquiry. Sun Valley argues that, even if it owed a duty under section 6-1103(6), and even if Milus established a genuine issue of material fact on that claim, Milus' claims are barred by Idaho Code section 6-1106 because Mr. Milus assumed the risk of colliding with snowmaking equipment that was plainly visible or was plainly marked in accordance with section 6-1103(2). We now turn our attention to this alternative argument.

**D. Idaho Code section 6-1106 bars Milus' claims because Mr. Milus assumed the risk of loss or damage resulting from his collision with Snow Gun 16, which was plainly marked in accordance with section 6-1103(2).**

Sun Valley asserts that Snow Gun 16 was plainly visible at the time of Mr. Milus' accident and therefore Milus' claims are barred under section 6-1106. Milus responds that the applicability of section 6-1106 is not appropriately before this Court because it was not sufficiently addressed by the district court. Alternatively, Milus asserts that adopting Sun Valley's interpretation of section 6-1106 would contradict Idaho Code section 6-1107, which provides that ski area operators are liable for violations of the duties enumerated in section 6-1103. Milus argues that, when read together, sections 6-1106 and 6-1107 create a comparative negligence scheme. As such, Milus' claim should be submitted to the jury. We begin with Milus' preservation argument.

14

Milus argues that Sun Valley's assumption of risk argument is not preserved for appeal because the district court did not rule on it. While Milus is correct that the district court did not rule on the applicability of Idaho Code section 6-1106, that does not prevent us from considering the argument on appeal.

> Idaho formerly required an appealing party to obtain an adverse ruling on an issue to preserve the issue for appeal. However, we have now rejected the adverse ruling requirement in favor of a broader standard where "[i]t is not mandatory for a party-appellant to obtain an adverse ruling from the trial court to preserve an issue for appellate review, so long as the party's position on that issue was presented to the trial court with argument and authority and noticed for hearing."

*Rich v. Hepworth Holzer, LLP*, 172 Idaho 696, 703 n.4, 535 P.3d 1069, 1076 n.4 (2023) (internal citations omitted). Both parties presented their positions on Sun Valley's assumption of risk argument to the district court with argument and authority. This is sufficient to preserve the argument for appeal.

Turning to the merits of Sun Valley's argument, it contends that Idaho Code section 6-1106 provides that skiers assume the risk of and legal responsibility for any injury resulting from a collision with plainly marked snowmaking equipment. Sun Valley alleges that Snow Gun 16 was plainly visible and therefore Mr. Milus assumed the risk of loss or damage resulting from his collision with the equipment.

Milus points to section 6-1107 to argue that their claims are not barred and that Sun Valley is liable because, in their view, Mr. Milus' collision was caused by Sun Valley's failure to properly post a sign at or near the top of the run as required by section 6-1103(6). Milus alleges that they were injured as a result of Mr. Milus' collision with Snow Gun 16. The plain language of section 6-1107 provides that a ski area operator "shall be liable for loss or damages caused by its *failure to follow the duties set forth in sections 6-1103 and 6-1104, Idaho Code*, where the violation of duty is causally related to the loss or damage suffered." I.C. § 6-1107.

We interpret statutes relating to one another in pari materia and construe the Act as "one system" to "carry into effect the intention" of the legislature. *Sankey v. Ivey*, 172 Idaho 574, 589, 535 P.3d 198, 213 (2023) (quoting *Grand Canyon Dories v. Idaho State Tax Comm'n*, 124 Idaho 1, 4, 855 P.2d 462, 465 (1993)). We are to "infer[] that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions." *Id.* (quoting *Grand Canyon Dories*, 124 Idaho at 4, 855 P.2d at 465). When statutes within the same Act are "in apparent conflict," we are still to as "far as reasonably

possible construe[] [the statutes] to be in harmony with each other." *Christensen v. West*, 92 Idaho 87, 88, 437 P.2d 359, 360 (1968) (internal quotation marks omitted) (citations omitted). "Thus, statutory provisions should not be read in isolation, but must be interpreted in the context of the entire document" and the "Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *Herndon v. City of Sandpoint*, 172 Idaho 228, 241, 531 P.3d 1125, 1138 (2023) (cleaned up) (quoting *Reclaim Idaho v. Denney*, 169 Idaho 406, 427, 497 P.3d 160, 181 (2021)). "Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction." *State, Dep't of Health & Welfare v. Wiggins* (*In re Est. of Wiggins*), 155 Idaho 116, 119, 306 P.3d 201, 204 (2013).

A review of section 6-1106 reveals that it actually does two things regarding skiers participating in the sport of skiing at a ski area: (1) it details when a skier assumes the risk of injuries resulting from participating in the sport of skiing; and (2) it imposes duties on skiers when they participate in the sport of skiing. Sun Valley's argument here is premised on the first of these. The first clause of section 6-1106 is unambiguous and creates an affirmative defense of assumption of the risk:

> *Each skier expressly assumes the risk of and legal responsibility for any injury to person or property that results from participation in the sport of skiing including any injury caused by the following, all whether above or below snow surface:* variations in terrain; any movement of snow including, but not limited to, slides, sloughs or avalanches; any depths of snow, including tree wells, or any accumulations of snow, whether natural or man made, including snowmaking mounds; freestyle terrain; surface or subsurface snow or ice conditions; bare spots, rocks, trees, other forms of forest growth or debris, lift towers and components thereof; utility poles, and *snowmaking and snowgrooming equipment which is plainly visible or plainly marked in accordance with the provisions of section 6-1103, Idaho Code*.

I.C. § 6-1106 (emphasis added). Given this unambiguous language, we hold that the first clause of section 6-1106 creates an assumption of risk defense. When applicable, the assumption of risk defense is a complete bar to recovery. *See Salinas v. Vierstra*, 107 Idaho 984, 989, 695 P.2d 369, 374 (1985).

Our holding on this point does not conflict with our decision in *Salinas*, where we held that the legislature abolished the assumption of the risk defense when it enacted a comparative negligence scheme in Idaho Code section 6-801. *Id.* at 988–89, 695 P.2d at 373–74. Twelve years after our decision in *Salinas*, we acknowledged that the legislature could legislatively create an assumption of risk defense and that section 6-1106 was an example of a legislatively created

16

defense. *See Davis v. Sun Valley Ski Educ. Found., Inc.*, 130 Idaho 400, 405–06, 941 P.2d 1301, 1306–07 (1997).

In *Davis*, we considered the relationship between the comparative negligence regime described in section 6-801 (enacted in 1971) and the assumption of risk defense described in section 6-1106 (enacted in 1979). We considered the timing of these two legislative enactments and held that the assumption of the risk defense in section 6-1106 was a legislatively created exception to Idaho's comparative fault regime and completely barred recovery against ski area operators:

> The question we must decide in the present case is how the trial court should have instructed the jury concerning *the assumption of risk to which* [*Idaho Code section*] *6-1106 refers*. In doing so, we must consider whether this assumption of the risk is *assumption of risk in the primary sense — a complete bar to recovery*, or in the secondary sense — merely a form of comparative negligence.
>
> [Idaho Code section] 6-1109 provides that a skier may not recover from the ski area operator for any losses or damages where the skier has violated a duty set forth in [Idaho Code section] 6-1106 and where the duty is causally related to the loss or damage suffered. This makes it clear that so far as any liability of a ski area operator, *the assumption of risk to which* [*Idaho Code section*] *6-1106 refers is assumption of risk in the primary sense. This constitutes an amendment of the comparative negligence statutes.*

*Id.* (emphasis added) (internal citations omitted). Our holding in *Davis* applies with equal force here. The first clause of section 6-1106 creates an assumption of risk defense for ski area operators which, if applicable, completely bars recovery against ski area operators. *See id.*; *Salinas*, 107 Idaho at 987, 695 P.2d at 372 (explaining that the assumption of risk defense is a complete bar to recovery); *Rountree v. Boise Baseball, LLC*, 154 Idaho 167, 174, 296 P.3d 373, 380 (2013) (same).

We are unpersuaded by Milus' argument that construing section 6-1106 to completely bar their claims conflicts with section 6-1107, which provides that ski area operators are liable if they violate the duties imposed by section 6-1103. Our holding today concerns only the first clause of section 6-1106 because that is the language that Sun Valley relies on here. The first clause creates an assumption of risk defense and specifies a list of risks assumed by skiers participating in the sport of skiing. The listing of specific risks leaves room for instances when a ski area operator may have breached a duty imposed by section 6-1103 but the skier's injury did not result from a risk identified in the first clause of section 6-1106.

Nor are we persuaded by Milus' argument that our holding today conflicts with section 6-1101, which provides that one legislative purpose underlying the Act is "to define those areas of responsibility and affirmative acts for which ski area operators shall be liable for loss, damage or injury[.]" First, the language of section 6-1106 is unambiguous, and we are therefore bound to apply it as written. Second, the assumption of the risk provision of section 6-1106 can be construed in pari materia with the legislative purposes underlying the Act. For the reasons discussed in the prior paragraph, the first clause of section 6-1106 identifies specific risks assumed by skiers and therefore the assumption of the risk provision does not bar all claims in all circumstances. Having determined that the first clause of section 6-1106 provides for an assumption of risk defense in specified circumstances, we now turn to whether the defense bars Milus' claims here.

We hold that Milus' claims are barred because the record establishes that Snow Gun 16 was plainly marked in accordance with section 6-1103(2) and that Mr. Milus assumed the risk of injury caused by that equipment. Section 6-1106 provides that Mr. Milus assumed "the risk of and legal responsibility for any injury to person or property that results from . . . snowmaking and snowgrooming equipment which is plainly visible or plainly marked in accordance with the provisions of section 6-1103, Idaho Code." As previously discussed, the district court properly granted summary judgment and dismissed Milus' claim that Sun Valley breached its duty under section 6-1103(2) to properly mark Snow Gun 16 with a warning implement. The same evidence demonstrating that Sun Valley complied with its duty under section 6-1103(2) also establishes that Mr. Milus assumed the risk, pursuant to section 6-1106, of any injury resulting from his collision with that equipment.

"[I]f the evidence reveals no disputed issues of material fact, then summary judgment should be granted." *Meikle v. Watson*, 138 Idaho 680, 682, 69 P.3d 100, 102 (2003). Because the evidence provided by Sun Valley indicated that Snow Gun 16 was plainly marked in accordance with section 6-1103(2) and Milus provided no evidence to dispute this fact, the first clause of section 6-1106 operated to bar Milus' remaining negligence claim. We therefore affirm the district court's decision granting summary judgment in favor of Sun Valley and dismissing Milus' claim that Sun Valley was negligent because it failed to satisfy its duty under section 6-1103(6) to place a sign at or near the top of the Lower River Run. *See Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 827, 367 P.3d 208, 222 (2016) ("The Court 'will uphold the decision of a

18

trial court if any alternative legal basis can be found to support it.' " (quoting *Daleiden v. Jefferson Cnty. Joint Sch. Dist. No. 251*, 139 Idaho 466, 470–71, 80 P.3d 1067, 1071–72 (2003))).

**E. Sun Valley is not entitled to attorney fees on appeal.**

Sun Valley requests attorney fees on appeal pursuant to Idaho Code section 12-121, which permits the prevailing party to recover its reasonable attorney fees if the Court finds that the non-prevailing party brought, defended, or pursued the case frivolously, unreasonably, or without foundation. Both parties prevailed on some of their arguments and therefore we conclude there is no prevailing party on appeal. Accordingly, we decline to award attorney fees to Sun Valley.

## V.    CONCLUSION

We affirm the district court's grant of summary judgment in favor of Sun Valley and its dismissal of the Milus' claims. Because both parties prevailed in part, there is no prevailing party for purposes of costs pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices BRODY and MOELLER CONCUR.


MEYER, J., partially dissenting, but concurring in the result.

While I concur with much of the Court's analysis and ultimately, in the result, I disagree that ski area operators are held to an ordinarily prudent person standard of care when performing the duties required by Idaho Code section 6-1103(1) through (9), and I therefore dissent from Section A of the Court's opinion.

I agree with the Court that Idaho Code section 6-1103(10) is far from a model in clarity, but I also agree that it is not ambiguous. Subsection (10) provides:

> DUTIES OF SKI AREA OPERATORS WITH RESPECT TO SKI AREAS. Every ski area operator shall have the following duties with respect to their operation of a skiing area:
>
> . . . .
>
> (10) Not to intentionally or negligently cause injury to any person; provided, that except for the duties of the operator set forth in subsections (1) through (9) of this section and in section 6-1104, Idaho Code, the operator shall have no duty to eliminate, alter, control or lessen the risks inherent in the sport of skiing, which risks include, but are not limited to, those described in section 6-1106, Idaho Code; and, that no activities undertaken by the operator in an attempt to eliminate, alter, control or lessen such risks shall be deemed to impose on the operator any duty to accomplish such activities to any standard of care.

I.C. § 6-1103(10).

19

The Court's holding that an ordinarily prudent person standard of care applies to the duties described in Idaho Code section 6-1103(1) through (9) turns on its reading of subsection (10). The Court emphasizes the difference between duties listed in subsections (1) through (9) and activities that are *voluntarily* undertaken under subsection (10) to eliminate, alter, control or lessen the risks inherent in the sport of skiing. The Court concludes that the ordinarily prudent person standard of care applies to the duties listed in section 6-1103(1) through (9) despite no statutory language so indicating, but that no standard of care applies to subsection (10)'s voluntarily undertaken activities, in keeping with subsection (10)'s final clause. Subsection (10), however, is more closely aligned with subsections (1) through (9) than the Court's analysis suggests.

A recap of Idaho Code section 6-1103 is in order. It is entitled, "Duties of Ski Area Operators with Respect to Ski Areas." Subsections (1) through (10) then follow. Section 6-1103 provides that "[e]very ski area operator shall have the following duties with respect to their operation of a skiing area[.]" I.C. § 6-1103. Subsections (1) through (9) then list duties, in the form of activities, that must be undertaken by the ski area operators. For example, subsection (1) requires ski area operators to "mark all trail maintenance vehicles and to furnish such vehicles with flashing or rotating lights that shall be in operation whenever the vehicles are working or are in movement in the skiing area[.]" I.C. § 6-1103(1). Subsection (5) mandates operators to "designate by trail board or otherwise which trails or slopes are open or closed[.]" I.C. § 6-1103(5). Subsection (8) provides that operators must "provide a ski patrol with qualifications meeting the standards of the national ski patrol system[.]" I.C. § 6-1103(8). The other subsections are similar in syntactical structure.

Subsection (10)'s structure is different. However, it contains a duty stated in the negative: "[n]ot to intentionally or negligently cause injury to any person[.]" Subsection (10) then provides that operators have no duty to eliminate, alter, control or lessen the risks inherent in skiing, except for the duties of the operator listed in subsections (1) through (9). Thus, subsections (1) through (9) are duties imposed by statute on operators to eliminate, alter, control, or lessen the risks inherent in skiing. Finally, subsection (10) states that "no activities undertaken by the operator in an attempt to eliminate, alter, control or lessen such risks shall be deemed to impose on the operator any duty to accomplish such activities to any standard of care." I.C. § 6-1103(10).

The Court's analysis focuses on *duties* versus *activities* in order to fashion a paradigm in which a prudent person standard of care applies to subsections (1) through (9), and the statutorily

20

mandated no-standard-of-care applies only to additional, voluntarily undertaken activities. But despite the words used in section 6-1103, the *duties* required of ski area operators are to eliminate, alter, control or lessen the risks inherent in skiing by performing the *activities* listed in subsections (1) through (9). In subsection (10), the legislature adds that ski area operators must not intentionally or negligently cause injury, and provides that except for subsections (1) through (9), there are no other duties to eliminate, alter, control or lessen risks. Finally, the legislature provides that "*no activities* undertaken by the operator in an attempt to eliminate, alter, control or lessen such risks shall be deemed to impose on the operator any duty to accomplish such activities to any standard of care." I.C. § 6-1103(10) (emphasis added). In my view, this last clause applies to all activities undertaken to eliminate, alter, control or lessen risks inherent in skiing, including those listed in subsections (1) through (9). It would have been simple enough for the legislature to provide that no-standard-of-care applied only to additional activities voluntarily undertaken by ski area operators, but it did not do so. Instead, it used more expansive language applying to "no activities undertaken."

It is counterintuitive for lawyers, judges, and legal scholars to imagine a tort duty without a standard of care attached. By what do we measure someone's performance in carrying out the duty if there is no standard? The Court defaults to the long-standing ordinarily prudent person standard, and that makes sense, but it is not consistent with the plain words of the statute, which specifically provide that the operator will not be held to "any standard of care" in accomplishing activities undertaken to eliminate, alter, control, or lessen risks inherent in skiing. Indeed, subsection (10) does not lack language establishing a standard of care. Instead, it eliminates any standard of care. Counterintuitive to those in the legal profession? Yes. Whether it is wise or socially unsound is not for us to decide. But that is the framework the legislature enacted, and in the words of *Verska v. St. Alphonsus Regional Medical Center*, "The wisdom, justice, policy, or expediency of a statute are questions for the legislature alone." 151 Idaho 889, 895, 265 P.3d 502, 508 (2011) (quoting *Berry v. Koehler*, 84 Idaho 170, 177, 369 P.2d 1010, 1013 (1961)).

For these reasons, I respectfully dissent from Section A of the Court's opinion.